THE PEOPLE *ex rel.* NEIL F. HARTIGAN, Attorney General, Plaintiff-Appellee, v. D. JAMES KENNEDY *et al.*, Defendants-Appellants.

First District (4th Division)   Nos. 1—90—1901, 1—90—1902 cons.

Opinion filed June 13, 1991.

882

Pope, Ballard, Shepard & Fowle, Ltd., of Chicago (Timothy C. Klenk and Jerome K. Bowman, of counsel), for appellant D. James Kennedy.

Keith A. Klopfenstein and Louis E. Bellande, Jr., both of Chicago, for appellant Richard B. Shoff.

Roland W. Burris, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Jennifer A. Keller, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

D. James Kennedy and Richard B. Shoff, defendants, brought this petition for leave to appeal pursuant to Supreme Court Rule 306(a)(1)(iii) on the grounds that the Illinois courts lack personal jurisdiction over them. (134 Ill. 2d R. 306(a)(1)(iii).) The two defendants

are nonresident directors of a Virginia not-for-profit corporation, National Aids Prevention Institute, Inc. (NAPI). In 1989, NAPI, acting through its president, engaged in fund-raising activities that ultimately resulted in the filing of a lawsuit by the Illinois Attorney General. The complaint alleges that 12 different defendants violated portions of the Illinois Solicitation for Charity Act (Ill. Rev. Stat. 1989, ch. 23, par. 5101 *et seq.*); the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1989, ch. 121½, par. 261, *et seq.*); and the Illinois Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1989, ch. 121½, par. 311 *et seq.*).

In their challenge to the Illinois courts' jurisdiction over them, Shoff and Kennedy assert that the State has failed to establish that they had the necessary minimum contacts with Illinois, thereby violating their due process rights. Alternatively, they rely on the fiduciary shield doctrine, the application of which would prevent the corporation's contacts with Illinois from being imputed to the individual defendants. The trial court found in favor of its *in personam* jurisdiction and denied their motions to quash.

We reverse.

BACKGROUND

The State's complaint alleges that various defendants collectively engaged in a profit-making scheme in Illinois under the guise of collecting charitable contributions for the Children with AIDS Foundation (CWAF), which is a subsidy service project of NAPI.

NAPI is a not-for-profit Virginia corporation with its principal place of business in Virginia. Kennedy, a resident of Florida, was chairman of the board of directors. Shoff, a resident of North Carolina, was vice-chairman. H. Edward Rowe, a Virginia resident, is a director and also NAPI's president. Rowe is not contesting the Illinois courts' jurisdiction over him based on his activities in this State.

At the heart of the controversy is the "wishing well" program that NAPI used to raise money for its AIDS-related charity, CWAF. Another defendant who is not a party to this appeal, Apple Marketing, exclusively markets the "Vortx Wishing Well Program," under which coin-collecting devices resembling wishing wells were placed in various retail stores for the purpose of garnering cash contributions to CWAF. Each wishing well bore a label containing CWAF's service message and identifying CWAF as a project of NAPI.

The record contains a number of documents relevant to the allegations of the complaint. These include NAPI's articles of incorporation; a copy of NAPI's registration in Illinois as a charitable organiza-

tion intending to solicit funds in the State; copies of contracts between CWAF and certain "vendors" who placed the wishing wells in retail stores and collected the proceeds; and Apple Marketing's written presentation of "The Vortx Wishing Well Program of the Children With Aids Foundation," which contains representations about the program and is designed to encourage vendors to participate in it at an expected profit to themselves.

Pursuant to the distribution contracts between CWAF and the individual vendors, the vendor pays CWAF $6,500 for 200 wishing wells. In return, the vendor has the right to collect and keep all contributions to each wishing well except for $2.50 per month per wishing well, which is to be remitted to CWAF.

The complaint alleges, in essence, that the defendants collectively violated the law through their participation in a scheme that allowed charitable donations to end up in the pockets of private individuals rather than in the coffers of CWAF. This fact was not disclosed to those members of the general public who donated cash to the charity by placing coins in the wishing wells located in retail stores. The complaint alleges that NAPI and the defendant officers and directors are trustees of the solicited funds and have a fiduciary duty to safeguard the funds and to prevent waste of charitable donations. The complaint further alleges that the defendants, in placing signs on the wishing well regarding CWAF's purpose, misrepresented to the contributors where the donations would go, leading them to believe that the money benefited children with AIDS.

Other, unverified allegations in the complaint, which were made "upon information and belief," state that the defendants intentionally misled the owners of stores in which the wells were placed into thinking that the donations put into the wells by store customers would primarily benefit the charity. The complaint characterizes the conduct of defendants as fraudulent misrepresentation of the nature of their business activities in violation of the statutory law prohibiting consumer fraud, deceptive trade practices, and the law governing charitable solicitations in Illinois.

Relevant to the pending appeal are those facts that bear on the issue of whether two of the 12 defendants, Kennedy and Shoff, had sufficient jurisdictional contacts with Illinois to justify our courts' exercise of jurisdiction over them.

On December 15, 1986, Kennedy, Shoff, and H. Edward Rowe incorporated NAPI and served as initial directors. NAPI was formed as a charitable corporation designed to benefit persons suffering from AIDS. It has been given a Federal income tax exemption for the do-

nations received by the charity. On August 25, 1989, NAPI registered with the office of the Illinois Attorney General as a charitable organization, pursuant to Illinois law. In the registration statement CWAF was listed as the subsidiary service project of NAPI that would be soliciting funds in Illinois. The registration form indicated NAPI/CWAF's intention to use coin-collection containers and direct mail in its solicitation efforts.

The allegations directed against Kennedy and Shoff in their capacity as directors and officers of NAPI state that both men were and are "responsible for the day-to-day business decisions and activities of NAPI, including the conduct of its affairs relating to charitable solicitations and use of donations and other funds." The complaint does not specifically allege that the two men had actual knowledge of the wishing well program, which apparently was initiated by H. Edward Rowe, NAPI's president and chief operating officer. Nor does the complaint allege that Kennedy and Shoff took any profits from the scheme or received any compensation from NAPI for their services as directors.

In their motions to quash summons pursuant to special and limited appearances, Kennedy and Shoff filed affidavits in support of their position that they had no contacts with Illinois that would justify the courts' exercise of jurisdiction over them. Kennedy stated as follows: In 1987, NAPI's board of directors, of which he is the uncompensated chairman, delegated to defendant Rowe, NAPI's president, the matter of possibly employing a professional fund-raiser, but there was no mention of the wishing well program; Kennedy himself was not involved in any way with the wishing well program, nor was he aware of its existence until the pending lawsuit; he never negotiated any aspect of NAPI's fund-raising efforts in any State or otherwise participated in such activities. He further stated that he owns no property in Illinois, is a resident of Florida, and never conducted any business in the State on behalf of NAPI or otherwise acted on behalf of the organization in Illinois.

Shoff's affidavit averred that he served as an uncompensated board member of NAPI from December 1986 until his resignation in January 1990. He stated that he never had any involvement with NAPI fund-raising in Illinois. The only time fund-raising was discussed at a NAPI board meeting was in 1987, when Rowe was authorized to consider employing a professional fund-raiser. Shoff did not recall any discussion of the wishing well program or Apple Marketing. Shoff further stated that he never resided in Illinois; owned no property in the State; received no money or other benefit from NAPI

fund-raising activities; never participated in the wishing well program; and did not learn of its existence until the instant lawsuit was filed. Finally, he stated that he did not know that a letterhead bearing his name and 18 others was used in marketing the wishing well program.

The wishing well program did not begin until 1989, more than two years after the board meeting in which fund-raising was generally discussed, and both Kennedy and Shoff maintain that they had no involvement in or knowledge of the program.

The State did not file counteraffidavits or additional evidentiary material, and did not request leave to take discovery of the jurisdictional issues. Instead, the government chose to rely on the verified and unverified allegations of its complaint, along with the attached exhibits.

In addition to the general allegation that Kennedy and Shoff, as directors, were responsible for the day-to-day operations of NAPI, the State relies on the fact that their names are included in the left margin of CWAF's printed letterhead. The record contains copies of letters written on the stationary. The letters summarize the program and explain the contract obligations of vendors who agreed to pay CWAF $2.50 per month per wishing well. The letterhead lists the national officers (Kennedy, Shoff, and Rowe), along with the advisory board consisting of 16 doctors specializing in different medical disciplines. The signature of H. Edward Rowe appears, along with the following designation: "Dr. H. Edward Rowe, President & CEO of CHILDREN WITH AIDS FOUNDATION (A service project of the National AIDS Prevention Institute)."

The record also reveals that the individual vendor contracts were executed by Rowe on behalf of CWAF. In registering NAPI as a charitable organization intending to solicit and collect funds in Illinois, Rowe filled out a registration statement listing himself as the president and CEO and also as "the *** individual having final discretion as to the distribution and use of contributions received." Lois Rowe, the only other person from NAPI or CWAF listed in the registration, is designated as "corporate secretary."

At the hearing on Kennedy's and Shoff's motion to quash summons, the trial court remarked that this is "a close case" and that "if this were a commercial case *** the decision would be different and the motion would be granted." Apparently, the trial court was distinguishing between for-profit corporations and those engaging in charitable fund-raising. The court denied both defendants' motions, noting that the two men's contacts with Illinois were "minimal" but that "against the backdrop of the solicitation of charitable funds, the fact

that they were initial directors of the corporation, the fact that their names appear *** [conspicuously along the side of the letterhead] ***, that is sufficient."

OPINION

We do not believe that the above facts establish that Kennedy and Shoff came into Illinois or committed any jurisdictional acts in this State within the traditional meaning of "minimum contacts" analysis. Because of certain recent developments in the interpretation of the Illinois long-arm statute and the Illinois Constitution's due process clause, however, we will address the preliminary issue of what is the proper standard to apply to the jurisdictional analysis. In our view, the ultimate issue for us to determine on appeal is whether the acts of CWAF, the subsidiary service of NAPI, can be imputed to Kennedy and Shoff as directors of NAPI or whether the fiduciary shield doctrine insulates them from defending this lawsuit in Illinois.

### THE REACH OF THE LONG-ARM STATUTE AND CONSTITUTIONAL RESTRAINTS

■ In *International Shoe*, the "minimum contacts" test was created to aid in the determination of whether a particular forum could exercise personal jurisdiction over a nonresident without offending "traditional notions of fair play and substantial justice" under the Federal due process clause. (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 2d 95, 102, 66 S. Ct. 154, 158.) In such cases as *Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 436, 427 N.E.2d 1203, the Illinois Supreme Court explained that the Illinois long-arm statute is to be given a definite meaning and scope that does not fluctuate with every new decision regarding the limits of Federal due process. Recent amendments to the Illinois statute, discussed below, may have opened the way to a new wave of fluctuations because of an express statement that Illinois courts may exercise jurisdiction on any basis "now or hereafter permitted" by the State and Federal constitutions.

■ Without discussing the amendments to the statute, the Illinois Supreme Court recently handed down a decision that activates the due process clause of the Illinois Constitution as a force to be reckoned with in the analysis of personal jurisdiction of Illinois courts. (*Rollins v. Ellwood* (1990), 141 Ill. 2d 244, 565 N.E.2d 1302.) The court announced that the question of whether it is fair to subject a nonresident defendant to Illinois jurisdiction cannot be determined solely by looking at the express terms of the long-arm statute or the

Federal due process standard. Rather, Illinois courts must now consider whether "it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." (141 Ill. 2d at 275, 565 N.E.2d at 1316.) The supreme court also formally recognized the fiduciary shield doctrine, which the Illinois Appellate Court has applied in various cases.

In *Rollins*, the supreme court reversed the circuit court's ruling that it had personal jurisdiction over two defendants, the City of Baltimore and a police sergeant from that city who came into Illinois to effect plaintiff's extradition to Maryland. Unfortunately for plaintiff Rollins, after police officers in East St. Louis, Illinois, stopped him for speeding, they ran a computer check and discovered that the Baltimore police department had an outstanding fugitive warrant for someone with the last name of Rollins. Though the first names were different and despite Rollins' protestations that he was not the same Rollins that was named in Baltimore's fugitive warrant, Illinois law enforcement officials kept him in jail pending extradition. For some reason, Rollins signed a waiver of extradition form and a Baltimore police sergeant travelled to Illinois to take custody of Rollins. A Baltimore judge thereafter found that he was not the same person who was identified in the Baltimore warrant and he was released. He then sued various defendants for damages.

In its analysis of the jurisdictional issues in *Rollins*, the Illinois Supreme Court commented that the due process clause of the Illinois Constitution "contains its own guarantee of due process to all persons (Ill. Const. 1970, art. I, §2), a guarantee which stands separate and independent from the Federal guarantee of due process." (141 Ill. 2d at 275, 565 N.E.2d at 1316.) The court noted that while it may consider the analysis of Federal due process cases, the final conclusions regarding the construction of the Illinois due process clause are for the Illinois Supreme Court to draw. The court stated:

> "We now wish to dispel any suggestion which might inhere in [our previous decisions] that, once a court finds a nonresident defendant has committed acts that fall within the definition of a tortious act or a transaction of business in Illinois (or any other acts specified by the long-arm statute), Illinois' jurisdictional standards are satisfied and all that remains is for the court to determine if exercising jurisdiction comports with Federal due process standards. Our jurisdictional considerations under State law are not limited to analyzing whether

a nonresident's conduct can be characterized by one of these literal textual descriptions." 141 Ill. 2d at 274, 565 N.E.2d at 1316.

Notwithstanding the Illinois Supreme Court's declarations in *Rollins*, the Attorney General in the pending appeal contends that the long-arm statute is now "co-extensive" with the minimum contacts due process requirements of Federal law. The grounds for this contention are the recent amendments to the long-arm statute, which became effective on September 7, 1989 (Pub. Act 86–840). The amendment added eight new, specific jurisdictional acts, including, for example, the "making or performance of any contract or promise substantially connected with this State" and the "ownership of an interest in any trust administered within this State." (Ill. Rev. Stat. 1989, pars. 2–209(a)(7), (a)(13).) The amendment also contains the previously mentioned clause that allows Illinois courts to "exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." Ill. Rev. Stat. 1989, ch. 110, par. 2–209(c).

■ Although the legislative intent may have been to expand Illinois courts' jurisdiction over nonresidents to the extent permitted by the Federal due process clause, we believe that the Illinois Supreme Court's pronouncements in *Rollins* constitute a judicial construction to the contrary. The supreme court, rather than the legislature, is charged with construing the scope of constitutional protections and limitations. Therefore, in the hopes of dispelling confusion over what law applies to Illinois courts reviewing a nonresident's jurisdictional acts in this State, we find that we are bound by the Illinois Supreme Court's declarations set out in *Rollins*.

■ In the pending case, the facts of record indicate that Kennedy and Shoff had no personal contacts with Illinois. They do not own property in this State or conduct business here, nor do they appear to have otherwise invoked the benefits and protections of Illinois law. The mere appearance of their names, printed on CWAF's letterhead along with 17 others, is not dispositive of the minimum contacts analysis.

The State argues, nevertheless, that the "stock-in-trade of charitable solicitation is the use of recognizable names" and that the defendants "purposefully lent their names to NAPI's fund-raising efforts." According to the State, which cites no authorities in support of this proposition, such name lending supports the exercise of jurisdiction because the directors should "reasonably expect" that their

names would be used in this fashion.

We do not agree. The solicitation letters in the record were signed by Rowe, president and chief operating officer of NAPI. Rowe is also the person who registered NAPI/CWAF as a charitable organization soliciting funds in Illinois, listing himself as the party responsible for the collection and management of solicitations. This tends to contradict the conclusory averment in the Attorney General's complaint that, as directors, Kennedy and Shoff were "responsible" for the daily operations of NAPI (and, by extension, the wishing well scheme). Nor do we find evidence that they "purposefully" lent their names to the program or availed themselves of the benefits of Illinois law. Rowe is the party who implemented the wishing well program and signed the vendor contracts, which set out the rights and duties of CWAF and the vendors in connection with the distribution of the wishing wells and collection of the donations.

In contrast, the affidavits of Kennedy and Shoff state that they were not involved in, or even aware of, the wishing well program in Illinois. Their sworn statements remain uncontroverted by any competent evidence in the record and thus are to be taken as true. *E.g., Loos v. American Energy Savers, Inc.* (1988), 168 Ill. App. 3d 558, 561, 522 N.E.2d 841; *Professional Group Travel, Ltd. v. Professional Seminar Consultants, Inc.* (1985), 136 Ill. App. 3d 1084, 1089, 483 N.E.2d 1291, 1295 (Well-pleaded facts in an affidavit that denies jurisdiction must be taken as true in the absence of counteraffidavits, "notwithstanding the existence of contrary averments in the adverse party's pleadings").

On the burden of proof issue, we agree with the reasoning of *Finnegan v. Les Pourvoiries Fortier, Inc.* (1990), 205 Ill. App. 3d 17, 25, 562 N.E.2d 989, 994, which holds in part that the party asserting personal jurisdiction over a nonresident must establish jurisdiction by a preponderance of the evidence, rather than by merely making a *prima facie* showing. We do not believe that even a *prima facie* showing of jurisdiction has been established in the pending case; in any event, the State did not file counteraffidavits or request discovery before the hearing on the jurisdictional issues. Therefore, we are not persuaded by the State's suggestion that if we reverse the trial court's rulings we should remand the matter for further factual development. The State had ample opportunity in the trial court to marshal whatever evidentiary matter it believed relevant to the jurisdictional issues. As the record stands, Kennedy and Shoff's personal connection to the wishing well scheme is virtually nonexistent.

THE FIDUCIARY SHIELD DOCTRINE

We then reach the final question of whether the jurisdictional acts of CWAF should be imputed to Kennedy and Shoff because they were initial directors of NAPI and officers of the not-for-profit corporation. This brings us back to the *Rollins* opinion, which commented at length on the application of the fiduciary shield doctrine in Illinois.

The *Rollins* court first discussed a line of Illinois appellate decisions that have recognized and applied the doctrine, concluding that the supreme court would not "uncritically adopt the holdings of these [appellate] courts regarding the validity of the doctrine in Illinois. In order for this court to recognize the doctrine, we have to find a reasonable basis for it in our long-arm statute and in the public policy and fairness considerations permeating the exercise by Illinois courts of jurisdictional power over nonresidents." (*Rollins*, 141 Ill. 2d at 277, 565 N.E.2d at 1317.) The *Rollins* court remarked that the appellate decisions concerning the fiduciary shield doctrine were rooted in Federal due process definitions of fairness. Apparently, the court also concluded that it should not uncritically adopt the holdings of the United States Supreme Court on the scope of Federal due process in the context of Illinois' jurisdiction over nonresidents, stating, "Over the years, these pronouncements [of the United States Supreme Court] have broadened State courts' jurisdictional power over nonresidents, and narrowed the understanding of the due process accorded to nonresident defendants by the fourteenth amendment." (141 Ill. 2d at 279, 565 N.E.2d at 1318.) In so stating, the Illinois Supreme Court has signalled its intent to adhere to a State standard of fairness and reasonableness. That standard has yet to be defined; however, *Rollins* demonstrates that technical compliance with the minimal standards of Federal due process is insufficient under Illinois law.

While we believe that the result in the pending case would be the same under either the Federal standard or the newly emerging Illinois standard, we must attempt to follow our supreme court's lead. Even if the facts in this case were sufficient to satisfy the Federal due process standards for imposing jurisdiction, we would be required to consider whether the exercise of Illinois long-arm jurisdiction would be fair and reasonable under *Rollins*. See *Rollins*, 141 Ill. 2d at 273, 565 N.E.2d at 1315 (acknowledging that under the rationale of *Calder v. Jones* (1984), 465 U.S. 783, 79 L. Ed. 2d 804, 104 S. Ct. 1482, the Baltimore police officer who committed an alleged tort in Illinois had sufficient contacts with the State to justify Illinois' jurisdiction under Federal due process standards, but declining to find

jurisdiction reasonable and fair under the Illinois constitution and fiduciary shield doctrine).

In the context of applying the fiduciary shield doctrine, the *Rollins* court found it "unfair and unreasonable, under Illinois' due process clause, *** to assert personal jurisdiction over an individual who seeks the protection and benefits of Illinois law, not to serve his personal interests, but to serve those of his employer or principal." (141 Ill. 2d at 280, 565 N.E.2d at 1318.) This statement indicates that the fiduciary shield doctrine does protect nonresident corporate representatives, even where the individual agent or employee physically comes into Illinois and commits a "tortious act" under our long-arm statute or within the scope of Federal minimum contacts. While Kennedy and Shoff may not be employees or agents in the sense that the Baltimore police officer was, we find that evidence of their "acts" in Illinois is so tenuous and vague that it is improper to hold them subject to our jurisdiction merely because they were directors of an organization that solicited charitable funds in Illinois under the direction of the president.

We conclude that it would be unfair and unreasonable under the Illinois due process clause to subject Kennedy and Shoff to the jurisdiction of our courts simply because (1) they are corporate directors of NAPI (2) who authorized the president and CEO of the organization to engage in fund-raising activities, (3) which activities were conducted in Illinois by Rowe, using (4) a printed letterhead bearing their names, along with those of 16 other individuals associated with NAPI. (See *Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 427 N.E.2d 1203 (holding that a Texas defendant was not subject to Illinois long-arm jurisdiction for committing "tortious acts" in Texas that resulted in diminution of the funds of an Illinois corporation).) The unrebutted affidavits of the two men state that they were not aware of or involved in Rowe's wishing well scheme, that they did not profit from it, and that they received no compensation for their services as members of the board or as officers. On this record, we cannot make a contrary inference that they participated in an unlawful scheme so as to justify laying aside the corporate shield doctrine and allowing the acts of Rowe and CWAF or NAPI to be imputed to them as individuals. Cf. *Burnhope v. National Mortgage Equity Corp.* (1990), 208 Ill. App. 3d 426, 567 N.E.2d 356 (defendant officer who owned 84% of stock and managed the company was not entitled to protection of fiduciary shield doctrine in light of unrebutted allegations that he was the alter ego of the corporation whose activities were for his own profit as well as company's).

FOR-PROFIT VERSUS NOT-FOR-PROFIT ACTIVITIES

As a final comment, we note our disagreement with the able trial court's central finding that because this case involves charitable solicitations instead of purely commercial activity, the fiduciary shield doctrine does not apply. In stating that if this case involved directors of a for-profit corporation, the court would have granted the motions to quash service of summons, the court did not explain why that would have made a difference. It may be that the wishing well marketing plan could be viewed as a legitimate way by which a commercial enterprise could earn profits, but not as a legitimate means by which a charity may solicit funds under Illinois law. The vendor contracts in the record reveal a mixed purpose, fund-raising for CWAF and profit raising for the distributors of the wishing wells. The contract provides that after the minimum of $2.50 per month per well is remitted to CWAF, the balance of collections "shall be the estimated amount placed into the said 500 units due to their inherent amusement and fascination characteristics." In light of this mixed purpose, the trial court may have believed that CWAF and its directors violated provisions of Illinois law that would not be in issue if a commercial enterprise distributed the wells for "amusement" purposes. Such speculation as to the trial court's basis for its stated distinction goes to the merits of the cause of action, however, and is immaterial to the jurisdictional question.

Nor do we find persuasive the State's attempt to justify the commercial/charitable distinction. As previously mentioned, the State asserts that the "stock-in-trade" of charitable corporations is the use of well-known names to encourage donations. Under this reasoning, the "well-known" names of Kennedy and Shoff enhanced the credibility of the program and induced others to participate.

Even assuming that their names enhanced the credibility of the program, we find this argument meaningless as a basis upon which to distinguish between charitable and noncharitable corporations. Jerry Lewis' telethons on behalf of muscular distrophy may persuade some viewers to donate money, just as Michael Jordan's television commercials may persuade children to lobby their parents for hundred-dollar footwear. The jurisdictional analysis central to this case, however, does not depend upon such considerations as whether name recognition induces people to donate money to charities. A person who purposely attaches his or her name to a scam in the hopes of making money is in a different position, of course, and such a person might well be subject to the jurisdiction of the State in which the fraud was

perpetrated. But the record before us does not justify such an inference. See also *Olinski v. Duce* (1987), 155 Ill. App. 3d 441, 508 N.E.2d 398 (holding that jurisdictional contacts were not satisfied by the mere fact that a Texas defendant's recognized name or logo was placed on equipment his companies sold to Illinois and a resident of the State was injured on the equipment).

■■■ For the foregoing reasons, we reverse the orders that denied Kennedy's and Shoff's motions to quash service of summons and remand for entry of an appropriate order dismissing these two defendants from the lawsuit.

Reversed and remanded.

JIGANTI, P.J., and McMORROW, J., concur.