Wayne A. MORS, Plaintiff,

v.

Rance WILLIAMS and Samuel R. Elkins, Jr., Defendants.

No. 91 C 6041.

United States District Court,
N.D. Illinois, E.D.

June 3, 1992.

Stanley D. Kubacki, James J. Reidy Ltd., William A. Murphy, Murphy & Murphy, Chicago, Ill., for plaintiff.

Ronald Hanley Balson, Ronald H. Balson, P.C., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Plaintiff, Wayne A. Mors ("Mors"), brings this action against defendants Rance Williams ("Williams") and Samuel R.

Elkins, Jr. ("Elkins") (collectively "defendants"), for breach of oral contract. On January 24, 1992, defendants filed a motion to dismiss the amended complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. We grant defendants' motion in part, and deny it in part. Specifically, we dismiss Elkins from this lawsuit as a party defendant because he is not subject to this court's personal jurisdiction. On the other hand, Williams is subject to this court's personal jurisdiction and his motion to dismiss is denied.

## I. *Facts*

The law is straightforward and beyond dispute. In ruling on a motion to dismiss for lack of personal jurisdiction we interpret the facts in favor of the party asserting jurisdiction. *Continental Bank N.A. v. Everett,* 742 F.Supp. 508, 508 n. 1 (N.D.Ill.1990) (citing *Turnock v. Cope,* 816 F.2d 332, 333 (7th Cir.1987)); *Nelson v. Park Indus., Inc.,* 717 F.2d 1120, 1123 (7th Cir.1983), *cert. denied,* 465 U.S. 1024, 104 S.Ct. 1277, 79 L.Ed.2d 682 (1984). Guided by this standard we now address the facts.

Mors is a citizen of Illinois. Williams is a citizen of Ohio. Elkins is a citizen of Georgia. Before April of 1989, Mors knew that Williams and Elkins had a joint interest in the manufacture and sale of fused silica investment material. Thereafter, in April of 1989, Williams telephoned Mors at his office in McHenry, Illinois and initiated a business transaction. During the course of their telephone conversation, Williams informed Mors that Elkins needed $100,000 in order to purchase equipment for his fused silica plant in Georgia. Williams further informed Mors that Elkins had originally asked Williams for the money, but he was unable to raise the cash. During this same telephone conversation, Williams asked Mors to advance Williams $100,000 so that Williams could pay the $100,000 over to Elkins.

In return, Williams promised Mors that he would repay the loan in full together with interest at the rate of four percent per annum in excess of the average prime rate as published in the *Wall Street Journal.* In addition, Williams also promised to pay Mors, as consideration for the loan, five percent of Williams' net commissions for five years from the sale of products sold by Williams' corporation, the Act Corporation. Williams also promised to personally repay the loan within no later than three years. After the parties' telephone conversation of April, 1989, and based on Williams' representations, Mors on or about April 24, 1989, borrowed $100,000 from his bank in Illinois which he then wire transferred to Williams' account at the Trust Corp. Bank in Ohio.

In the Fall of 1989, Mors traveled to the fused silica plant in Georgia. The fused silica plant is owned and operated by Elkins. While Mors was visiting the Georgia plant, Elkins stated to Mors that he had received the money from Williams and that he would repay the money to Mors through Williams as soon as Williams successfully secured an end loan.

From May of 1989 until December of 1990, Williams paid Mors monthly interest payments in the amount of one-thousand two-hundred seventy-four dollars and ten cents ($1,274.10). This amount represented the approximate interest charges on the loan Mors had secured from his Illinois bank. As of December, 1990, neither Williams nor Elkins have made payments of any kind to Mors.

## II. *Discussion*

Mors contends that this court has jurisdiction based on diversity of citizenship. 28 U.S.C. § 1332.[1] In a case based on diversity of citizenship, a federal district court in Illinois has personal jurisdiction over a nonresident defendant only if an

---

**1.** Mors is once again confused regarding the jurisdictional amount. The court dismissed Mors' initial complaint for failure to assert a proper basis for subject matter jurisdiction. In his amended complaint, Mors alleges in paragraph four that the matter in controversy exceeds the sum of $25,000.00. The jurisdictional amount set by statute is $50,000.00. 28 U.S.C. § 1332(a). However, we decline to dismiss Mors' amended complaint on this ground because in paragraph eighteen he alleges that defendants are indebted to him in the amount of $110,466.00, thus satisfying the jurisdictional amount.

Illinois court would have jurisdiction. *Daniel J. Hartwig Assoc., Inc. v. Kanner*, 913 F.2d 1213, 1216 (7th Cir.1990); *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 279 (7th Cir.1990); *FMC Corp. v. Varonos*, 892 F.2d 1308, 1310 (7th Cir.1990). In determining whether a state court has jurisdiction we need to make two inquiries: "(1) whether a state statute grants personal jurisdiction over the defendant; and (2) whether such jurisdiction is within constitutional bounds." *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir.1992).

Until September, 1989, a nonresident defendant could be sued in Illinois if (1) he performed one of the enumerated acts under Illinois' long-arm statute; and (2) the minimum contacts with Illinois that due process requires were present. *FMC*, 892 F.2d at 1310. Courts interpreting the Illinois long-arm statute considered these two requirements separately. *See, e.g., Saylor v. Dyniewski*, 836 F.2d 341, 343 (7th Cir. 1988); *Green v. Advance Ross Electronics Corp.*, 86 Ill.2d 431, 56 Ill.Dec. 657, 660, 427 N.E.2d 1203, 1206 (1981).

■■ However, Illinois amended its long-arm statute, effective September 7, 1989, to add a "catch-all" provision. This provision provides that "[a] court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." ILL.REV.STAT. ch. 110, para. 2–209(c) (1989). This amended provision makes the first inquiry (*i.e.*, did defendant perform one of the enumerated acts under the Illinois long-arm statute) unnecessary because jurisdiction under the Illinois long-arm statute is co-extensive with the limits of due process. *See Dehmlow*, 963 F.2d at 945; *FMC*, 892 F.2d at 1311 n. 5; *Damian Services Corp. v. PLC Services, Inc.*, 763 F.Supp. 369, 371 (N.D.Ill.1991); *Kinney v. Anchorlock Corp.*, 736 F.Supp. 818, 825 n. 5 (N.D.Ill.1990). Stated differently, if due process is satisfied, jurisdiction is met un-

der Section 2–209(c) of Illinois' long-arm statute irrespective of whether a defendant has done any of the acts set forth under Section 2–209(a)(1)–(14). ILL.REV.STAT. ch. 110, paras. 2–209(a, c) (1989); *Damian*, 763 F.Supp. at 371; *Kinney*, 736 F.Supp. at 825 n. 5.[2]

■ This does not end our analysis. The Illinois Supreme Court in *Rollins v. Ellwood*, 141 Ill.2d 244, 152 Ill.Dec. 384, 565 N.E.2d 1302 (1990), recently intimated that a new two-step inquiry may be required. In deciding whether it is fair to subject a nonresident defendant to Illinois jurisdiction a court may not look solely to the Illinois long-arm statute and the federal due process clause. *Rollins*, 152 Ill.Dec. at 398, 565 N.E.2d at 1316. *See People ex rel. Hartigan v. Kennedy*, 215 Ill.App.3d 880, 159 Ill.Dec. 438, 443, 576 N.E.2d 107, 112 (1991); *Aetna Casualty & Surety Co. v. Crowther, Inc.*, 221 Ill.App.3d 275, 163 Ill. Dec. 679, 581 N.E.2d 833 (1991). The Illinois Supreme Court unequivocally stated that the Illinois Constitution, which contains its own separate and independent guarantee of due process, must also be satisfied. *Rollins*, 152 Ill.Dec. at 398, 565 N.E.2d at 1316. Therefore, in analyzing defendants' motion to dismiss, the central issue raised is whether this court's exercise of personal jurisdiction over Elkins and Williams is constitutional so as not to offend the due process clause of the Fourteenth Amendment and the due process clause of the Illinois Constitution.

A. Due Process Clause of the Fourteenth Amendment

A court's assertion of personal jurisdiction over a nonresident defendant must comport with "traditional notions of fair play and substantial justice" to satisfy the due process clause of the Fourteenth Amendment. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In fact, the Seventh Circuit has recently stated that the fair play

---

**2.** In any event, jurisdiction over Williams is appropriate under the transaction of business provision, Section 2–209(a)(1). *Cook Assocs., Inc. v. Colonial Broach & Mach. Co.*, 14 Ill.

App.3d 965, 304 N.E.2d 27 (1973); *see also Club Assistance Program, Inc. v. Zukerman*, 594 F.Supp. 341, 347 (N.D.Ill.1984).

and substantial justice standard is the only standard agreed upon by a majority of the Supreme Court. *Dehmlow,* 963 F.2d at 945; *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 114–116, 107 S.Ct. 1026, 1033–1034, 94 L.Ed.2d 92 (1987) (Part II.B opinion of the Court). Therefore, we will use this standard as our benchmark.

### 1. *Fairness Factors*

Several factors must be considered by a court before exercising jurisdiction over a nonresident defendant. The Seventh Circuit has characterized certain concerns as fairness factors. These considerations include: "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.'" *Dehmlow,* 963 F.2d at 945 (quoting *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980)).

After weighing these factors, we conclude that it would be fair and reasonable to haul Williams, but not Elkins, into an Illinois court. In our opinion, it would not be unduly burdensome to require Williams to litigate this lawsuit in Illinois. Travel from Ohio to Illinois is not oppressive. In addition, Mors and the State of Illinois have considerable interests in litigating this case in Illinois. Mors is an Illinois citizen who claims that he was injured financially as a result of Williams' failure to repay the $100,000 loan with interest. Moreover, Illinois has a significant interest in assuring redress for its citizens. *See Dehmlow,* 963 F.2d at 947. These same considerations do not apply to Elkins.

### 2. *Reasonableness of Jurisdiction*

The Seventh Circuit in *Dehmlow* explained that the reasonableness of jurisdiction focuses not only on the fairness concerns but on a defendant's relation to the forum state. The "'constitutional touch-stone' of the determination whether an exercise of personal jurisdiction comports with due process 'remains whether the defendant purposely established minimum contacts' with the forum state." *Asahi,* 480 U.S. at 108–09, 107 S.Ct. at 1030 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)). These "minimum contacts" should be purposeful conduct invoking the benefits of that forum state, such that the defendant should "reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). In other words, the focus of the court's inquiry must be on "the relationship among the defendant, the forum, and the litigation." *Heritage House,* 906 F.2d at 283 (quoting *Schaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977)). The main factor in the minimum contacts due process analysis is foreseeability.

A relevant inquiry in the foreseeability analysis is which party initiated the business transaction. *Heritage House,* 906 F.2d at 283. Clearly, Williams initiated the business dealing by telephoning Mors at his office in McHenry, Illinois. It was Williams who sought out Mors and requested that Mors loan him $100,000 for the benefit of Elkins. Thereafter, based on representations and assurances given to Mors by Williams, Mors arranged for a loan from his bank in Illinois. Mors then wire transferred the funds from Illinois to Williams in Ohio. Subsequently, from May of 1989 until December of 1990, Williams mailed to Mors in Illinois approximately nineteen monthly payments in the amount of $1,274.10.

Certainly, Williams must have contemplated the effect his failure to make monthly loan payments to Mors would have. Williams knew, or should have known, that if he failed to make the requisite payments, he could be subject to litigation in Illinois. We conclude that Williams purposely availed himself of the privilege of conducting business in Illinois by borrowing funds from an Illinois citizen. *Lyons Sav. &*

*Loan Ass'n v. Geode, Inc.,* 626 F.Supp. 1141, 1143 (N.D.Ill.1986).

In this same vein, we find that substantial performance of the oral contract was to be performed in Illinois. Mors and Williams allegedly formed an oral contract over the telephone after Williams initiated contact with Mors. In our view, the nature of the oral contract, *i.e.,* securing a loan, was such that both parties knew Mors would perform his end of the bargain in Illinois by securing a loan from his Illinois bank. Additionally, the service performed by Mors which was the basis of the contract and which allegedly obligated Williams to repay Mors, had been performed in Illinois. Therefore, we conclude that the oral contract allegedly entered into by the parties required at least substantial performance in Illinois. Consequently, these factors militate in favor of a finding that Williams transacted business in Illinois.

On a related point, it is of no significance that Williams did not travel to Illinois in connection with the making of the oral contract. The physical presence of Williams in Illinois during the making of the contract is not a prerequisite to confer jurisdiction. *Heritage House,* 906 F.2d at 281. A contractual relationship based on telephone and mail contacts may be sufficient to establish jurisdiction over a defendant. *Heritage House,* 906 F.2d at 281. Therefore, the mere fact that Williams was never physically present in Illinois does not diminish this court's ability to exercise jurisdiction over him. Therefore, this court concludes that the exercise of personal jurisdiction over Williams will not offend the due process clause of the Fourteenth Amendment.

B. Due Process Clause of the Illinois Constitution

■ Similarly, in order to protect the due process clause of the Illinois Constitution (Ill. Constit. 1970, Art. 1, § 2), jurisdiction is to be asserted "only when it is fair, just, and reasonable to require a non-resident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins,* 152 Ill.Dec. at 398, 565 N.E.2d at 1316 (citing *People ex rel. Mangold v. Flieger,* 106 Ill.2d 546, 550, 88 Ill.Dec. 640, 644, 478 N.E.2d 1366, 1370 (1985)). In construing the Illinois Constitution's guarantee of due process, this court may look for guidance to federal courts' constructions of the federal due process clause. *Rollins,* 152 Ill.Dec. at 398, 565 N.E.2d at 1316. Accordingly, this court finds that the requirements of the Illinois due process clause are satisfied as to Williams for the same reasons previously discussed in connection with the federal due process analysis.

On the other hand, we conclude that subjecting Elkins to jurisdiction in Illinois does offend the due process guarantees of the Constitutions of the State of Illinois and the United States. Elkins is a resident of Georgia. In his affidavit Elkins states that he does not own or possess any real property in Illinois. Furthermore, he states that he has not transacted any business in the State of Illinois. His sworn statements are not controverted by Mors and thus we take them as true.

Equally telling, Mors' amended complaint wholly fails to allege any conduct by Elkins which would connect him to Illinois. In paragraph fifteen of his amended complaint Mors alleges that he visited Elkins' fused silica plant *in Georgia* and during the course of their visit Elkins allegedly stated that "he would repay the money through Williams to plaintiff as soon as Williams received an End Loan." Clearly, this is not sufficient.

The bottom line is that no communications or conversations ever occurred in Illinois between Elkins and Mors. Elkins never telephoned Mors in Illinois nor did he ever mail any loan payments to Mors in Illinois. Elkins did not purposefully avail himself of the opportunity to transact business in Illinois. Any connection Elkins may have with Illinois is simply too attenuated to haul him into court here. Unfortunately for Mors, Illinois jurisdiction is not available to every Illinois resident who sus-

**744**

tains damage or loss at the hands of an out-of-state defendant. Elkins is dismissed as a party defendant because this court lacks personal jurisdiction over him. *See Damian Services Corp. v. PLC Services, Inc.,* 763 F.Supp. 369 (N.D.Ill.1991); *Kinney v. Anchorlock Corp.,* 736 F.Supp. 818, 826 (N.D.Ill.1990).

### III. *Conclusion*

For the reasons stated more fully in this opinion, defendants' motion to dismiss Mors' amended complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure is granted as to defendant Elkins and denied as to defendant Williams. Elkins is dismissed as a party defendant from this lawsuit.