Craig **DEHMLOW**, Plaintiff–Appellant,

v.

**AUSTIN FIREWORKS**, Defendant–
Appellee.

No. 91–1566.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 8, 1991.

Decided May 7, 1992.

As Amended May 7, 1992.

Before CUMMINGS and RIPPLE, Circuit Judges, and CRABB, Chief District Judge.[*]

CUMMINGS, Circuit Judge.

Craig Dehmlow, an Illinois resident, was seriously injured in Barrington, Illinois, when a firework sold by defendant Austin Fireworks ("Austin") improperly exploded. Austin, a Kansas corporation, manufactured and distributed fireworks including the allegedly defective firework to a Wisconsin corporation for the stated purpose of displaying the fireworks in Illinois and other Midwestern states. On appeal, the question presented is whether Austin had minimum contacts with Illinois such that Illinois courts may constitutionally exercise personal jurisdiction over Austin. The district court held not, but we disagree.

I.

Plaintiff Craig Dehmlow was severely injured during a 1988 Fourth–of–July fireworks display at Barrington High School in Barrington, Illinois.[1] Dehmlow, a Carpentersville, Illinois, resident, had been hired for the Barrington fireworks display as a fireworks "shooter" by Bartolotta Fireworks, Inc., a Wisconsin Corporation. While employed as such, Dehmlow sustained severe and permanent injuries and disfigurement when one of the fireworks manufactured and distributed by defendant Austin improperly detonated (Appellant Br. 8).

Dehmlow filed a products liability claim against Austin in the Circuit Court of Cook County in order to recover damages for his personal injury. Dehmlow invoked the jurisdiction of the Illinois courts under the "tortious act" provision of the Illinois long-arm statute, Ill.Rev.Stat. ch. 110, ¶ 2–209(a)(2) (1987). Austin received a summons and complaint by certified mail

Timothy D. McMahon and Erica Nan Long (argued), Wiedner & McAuliffe, Chicago, Ill., for plaintiff-appellant.

Dinah L. Archambeault and Neil T. Goltermann (argued), Spesia & Ayers, Joliet, Ill., for defendant-appellee.

* The Honorable Barbara B. Crabb, Chief Judge of the Western District of Wisconsin, is sitting by designation.

1. Because the district judge dismissed this case for lack of personal jurisdiction, we interpret the facts in the light most favorable to the party

asserting jurisdiction. *Nelson by Carson v. Park Industries, Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983), certiorari denied *sub nom. Bunnan Tong & Co. v. F.W. Woolworth Co.*, 465 U.S. 1024, 104 S.Ct. 1277, 79 L.Ed.2d 682 (1984).

through the Secretary of State pursuant to the Business Corporation Act of 1983, Ill. Rev.Stat. ch. 32, ¶ 5.30 (1987), and subsequently removed the case to federal court based on diversity jurisdiction. There Austin moved for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(4) for lack of personal jurisdiction and for insufficiency of process. In the alternative, Austin moved to dismiss because of issue preclusion, a motion based on a previous suit brought by Austin's insurance carrier. Dehmlow contended that the exercise of personal jurisdiction over the defendant met the requirements of both the Illinois long-arm statute and the Due Process Clause of the Fourteenth Amendment. Dehmlow also maintained that service of process was proper under the Illinois Business Corporation Act. Moreover, he asserted that issues raised in the previous case were not identical, actually litigated, or actually and necessarily determined.

As a basis for resolving the personal jurisdiction issue in federal district court, Dehmlow submitted the following information. Defendant Austin Fireworks is incorporated in Kansas, and has its principal place of business in that state. Austin imports, assembles, and sells fireworks and conducts fireworks displays for cities and governmental entities. Austin advertises its fireworks in national publications and has never restricted its sales to particular states. Among its clients, Austin identified twelve regular Illinois customers. In 1988 and 1989 Austin sold fireworks to Nostalgia Pyrotechnics, Gemini Fireworks, Stars and Stripes, and Traditional American—all Illinois businesses. In 1987, 1988, and 1989, Austin conducted fireworks displays for the Village of Streator in Streator, Illinois. Austin signed contracts with Streator, under which Austin agreed to install, set up, display, operate, and remove all equipment necessary for the displays. One of Austin's Kansas employees travelled to Illinois to conduct the display and Austin employed Illinois residents to assist with those displays.

In 1988, after many negotiations over the telephone, Austin travelled to Chicago to discuss putting on Chicago's Fourth-of-July fireworks display with an official from the Mayor's Office of Special Events for the City of Chicago. Solely as a result of the City's late notice of contract, Austin was unable to perform Chicago's fireworks display. However, in 1989, Austin sold $35,458.55 of fireworks equipment for the City of Chicago's August 1989 Venetian Night fireworks display. This sale is believed to be Austin's largest sale in 1989. Austin helped the City of Chicago plan the display, delivered the fireworks equipment to Chicago, ordered additional shipments of fireworks to Navy Pier, and hired a driver to return the equipment to Kansas. Paul Austin, President of Austin Fireworks, attended Venetian Night to solicit additional business.

Austin sold the allegedly defective firework that injured Dehmlow to Bartolotta Fireworks, Inc. ("Bartolotta"), located in Genesee Depot, Wisconsin, approximately 40 miles north of the Illinois–Wisconsin border. Bartolotta manufactures fireworks and puts on fireworks displays in Illinois and other midwestern states. Bartolotta's president, Sam Bartolotta, told Austin president Paul Austin that Bartolotta intended to transport some of Austin's fireworks to Illinois for fireworks displays.

In a memorandum opinion, the district court dismissed Dehmlow's case for lack of personal jurisdiction based on *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Dehmlow filed a motion to vacate the district court's judgment and to transfer the action to the United States District Court, District of Kansas. However, Dehmlow's motion was denied.[2] On appeal, Dehmlow challenges the trial court's determination that defendant's Fourteenth Amendment right to due process of law prohibits Illinois courts from exercising personal jurisdiction over the defendant.[3]

2. The motion to transfer is not at issue on appeal.

3. The district court accepted Dehmlow's argument that collateral estoppel did not apply and Austin did not cross-appeal from that portion of

## II.

### A.

■ In order to determine the scope of a federal district court's personal jurisdiction in a diversity case, this Court examines state law governing personal jurisdiction. *FMC Corp. v. Varonos*, 892 F.2d 1308, 1310 (7th Cir.1990). When resolving the question of state court jurisdiction over a defendant, a court must make two inquiries: 1) whether a state statute grants personal jurisdiction over the defendant and 2) whether such jurisdiction is within constitutional bounds. *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 665 (7th Cir.1986). The first inquiry is wholly unnecessary in the case of many modern state statutes which include catch-all provisions that grant to state courts jurisdiction over all matters in which the state may constitutionally assert jurisdiction. See, e.g., Ill. Rev.Stat. ch. 110, ¶ 2–209(c) (1989).[4] Illinois explicitly provides for personal jurisdiction over a defendant who has committed a tortious act in Illinois, Ill.Rev.Stat. ch. 110, ¶ 2–209(a)(2) (1987 & 1989), and has long evinced a desire to exercise jurisdiction in such circumstances. See, e.g., *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961). Because the statutory basis for jurisdiction is clear, the central issue raised in this case regards the constitutionality of exercising personal jurisdiction over a nonresident defendant that sold its product for ultimate use in Illinois and the product caused serious injury in Illinois to a citizen of Illinois.

■ Under the Due Process Clause, a state court may exercise personal jurisdiction over a nonresident defendant if, given the contacts with the forum state, that exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). This Court's analysis begins with the fair play and substantial justice standard—the only standard agreed upon by a majority of Supreme Court Justices in the Court's most recent adjudication involving personal jurisdiction. *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (Part II.B, opinion of the Court). Several factors inform the fairness of a state court's exercise of jurisdiction over a defendant. Those factors include:

> "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.'"

*Id.* at 113, 107 S.Ct. at 1033 (quoting *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564). Upon weighing these considerations in the case before us, it is clear that haling defendant into an Illinois court would be both fair and reasonable.

■ The burden defendant faces in adjudicating its case in Illinois is not a heavy one. Unlike *Asahi*, in the present case long-arm jurisdiction does not extend beyond national boundaries and the defendant does not have to defend itself in a foreign nation's judicial system. The journey from Kansas to Illinois is not an onerous one for Austin, whose employees have travelled that route for business purposes several times in the recent past.

Furthermore, both Dehmlow and the State of Illinois have significant interests in adjudicating the case in Illinois. Dehmlow, a citizen of Illinois, has claimed that the

---

the district court's judgment. The district court did not reach the issue of sufficiency of process.

**4.** Although the most recent version of Illinois' long-arm statute contains such a catch-all provision, in 1988, at the time of Dehmlow's injury, the statute did not contain that provision. In this case the question of retroactive application of Illinois' extended long-arm jurisdiction is irrelevant and we do not decide the question. Statutory jurisdiction in this case does not depend on application of the present statute's catch-all provision.

injury inflicted on him in the State of Illinois by the defendant's defective product has caused him to suffer serious and permanent injury and disfigurement. In addition to its interest in assuring adequate remedial relief for its citizens who have been injured, Illinois has an interest in applying its products liability law in an area which involves issues of public safety that have been directly addressed by the Illinois legislature. See the Fireworks Regulation Act of Illinois, Ill.Rev.Stat. ch. 127½, ¶ 101 *et seq.* (1987). The possibility of being haled into an Illinois court creates a particularly effective deterrent to the manufacture of unsafe fireworks where purchasers of Austin's fireworks might otherwise be immune from Illinois tort law liability on the basis of workers' compensation statutes, as happened in the present case.

Finally, the interstate judicial system's interest in resolving the case efficiently is served by adjudicating the claim at the situs of Dehmlow's accident since his employer, Bartolotta Fireworks, the purchaser of the allegedly defective fireworks, resides only 40–50 miles north of Illinois.

Because of the slight burden on the defendant and the significant interests of the plaintiff and the State of Illinois, Illinois' exercise of personal jurisdiction over the defendant conforms with general notions of fairness.

### B.

■ The reasonableness of jurisdiction not only rests on the equitable concerns addressed in part A, but also on the defendant's relation to the forum state. In determining whether jurisdiction is proper, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). That requirement is met if the defendant "purposefully avails himself of the privilege of conducting activities within the forum state." *Jacobs/Kahan & Co. v. Marsh,* 740 F.2d 587, 592 (7th Cir.1984) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)). The defendant's conduct in relation to the forum state, not unilateral actions of the plaintiff, determine jurisdiction.

■ In *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, the Supreme Court stated that "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* at 297–298, 100 S.Ct. at 567. The Supreme Court reiterated its prior statement on this issue in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). This Circuit has repeatedly endorsed the "stream of commerce theory" and has resolved cases on the basis of it. See *Mason v. Lli Luigi & Franco Dal Maschio,* 832 F.2d 383, 386 (7th Cir.1987) (holding that Illinois courts had personal jurisdiction over Italian company whose machine caused personal injury in Illinois and reaffirming this Circuit's belief in the continued validity of *Gray v. American Radiator & Standard Sanitary Corp., supra,* after *Asahi*); *Giotis v. Apollo of the Ozarks, Inc.,* 800 F.2d 660, 667 (7th Cir.1986) (granting to Wisconsin courts personal jurisdiction over a Missouri fireworks manufacturer which sold fireworks that caused personal injury in Wisconsin even though defendant sold those fireworks to a Minnesota resident), certiorari denied, 479 U.S. 1092, 107 S.Ct. 1303, 94 L.Ed.2d 158 (1987); *Nelson by Carson v. Park Industries, Inc.,* 717 F.2d 1120 (7th Cir.1983) (permitting Wisconsin courts to exercise personal jurisdiction over Hong Kong flannel shirt manufacturer whose product caused personal injury in Wisconsin), certiorari denied, 465 U.S. 1024, 104 S.Ct. 1277, 1278, 79 L.Ed.2d 682 (1984). However, the Supreme Court's most recent opinion casts some doubt on the future viability of the stream of commerce theory. In *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 107 S.Ct. 1026, a divided

Supreme Court could not agree on the proper understanding of that theory.

■ Under the stream of commerce theory Dehmlow's case is resolved on his behalf by noting that Austin sold fireworks to Bartolotta with the knowledge that its fireworks would reach Illinois consumers in the stream of commerce.[5] Because the Supreme Court established the stream of commerce theory, and a majority of the Court has not yet rejected it, we consider that theory to be determinative. We may not depart from Court precedent on the basis of a belief that present Supreme Court Justices would not readily agree with past Court decisions. *Rodriguez de Quijas v. Shearson/American Exp., Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 1921–1922, 104 L.Ed.2d 526 (1989). Moreover, fairness commends the application of the stream of commerce theory. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473–474, 105 S.Ct. 2174, 2182–83 (explaining that a state has a manifest interest in providing its residents with a convenient forum for redress of injuries, that the Due Process Clause is not a territorial shield to enable defendants to avoid interstate obligations, and that modern transportation and communication have decreased the burden to a nonresident defendant in a state in which it has some economic activity).

Although this case is being decided on the basis of the more permissive stream of commerce theory, in recognition of the recent split of Supreme Court authority on this issue, we also address Dehmlow's contention that the facts of his case satisfy

even the more stringent minimum contacts test set forth in Justice O'Connor's plurality opinion in *Asahi.* Under her view, due process requires *"an action of the defendant purposefully directed toward the forum State* (italics in original)." *Asahi,* 480 U.S. at 112, 107 S.Ct. at 1032 (plurality opinion). This standard rejects the notion that "[t]he placement of a product into the stream of commerce, without more" constitutes "an act of the defendant purposefully directed toward the forum state." *Id.* Instead, a defendant must have "an intent or purpose to serve the market in the forum State," which may be demonstrated by additional conduct of the defendant. *Id.*

In this case Austin purposefully directed its sale of fireworks toward Illinois and its actions evinced its intent to serve the market for fireworks in Illinois. First, Austin's President was directly informed that some of the fireworks it sold to Bartolotta were for use in particular fireworks displays in Illinois.

■ Second, Austin's additional contacts with Illinois reveal that company's intent to serve the market for fireworks in Illinois.[6] At the time of Dehmlow's injury, Austin had already displayed fireworks in 1987 and 1988 for the City of Streator, Illinois, pursuant to written contracts between Austin and Streator. Moreover, in 1988 Austin had actively solicited business from the City of Chicago and was only unable to conduct fireworks displays for Chicago because of the late notice of contract. Austin's 1988 communications with

---

**5.** Although Illinois fireworks consumers are not necessarily purchasers of those products, this Circuit has not considered that problematic. See *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660 (7th Cir.1986). We have considered a defendant to be subject to state court jurisdiction when the defendant sells its product "for ultimate use" in the forum state. *Mason,* 832 F.2d at 386–387.

**6.** Ordinarily, a defendant's additional contacts with the forum state are considered when determining whether a state court can exercise general *personal jurisdiction over a defendant,* a question not at issue in this case. General personal jurisdiction requires evidence of "continuous and systematic" contacts between the defendant and the forum state. *Helicopteros Nacio-*

*nales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). A determination of specific personal jurisdiction, on the other hand, rests on the defendant's contacts with the forum state regarding the transaction underlying litigation. *Wilson v. Humphreys (Cayman), Ltd.,* 916 F.2d 1239 (7th Cir.1990), certiorari denied, — U.S. —, 111 S.Ct. 1415, 113 L.Ed.2d 468 (1991). However, additional contacts between the defendant and the forum state may be considered when determining whether the defendant merely placed his product in the stream of commerce, or whether his action was more purposefully directed at the forum state. *Asahi,* 480 U.S. at 110, 112, 107 S.Ct. 1026, 1032 (plurality opinion of O'Connor, J.).

the Mayor's Office of Special Events for the City of Chicago later bore fruit when it received a contract to display fireworks for Chicago's Venetian Night in 1989. Contacts between Austin and Illinois businesses increased in 1989. These additional contacts between Austin and Illinois demonstrate that the defendant did not merely set its products adrift on a stormy sea of commerce which randomly swept the products into Illinois. Instead, defendant's actions were part of a concerted attempt to serve the market for fireworks in Illinois.

■■■ Under the Fourteenth Amendment a defendant may not be subject to binding judgments of a forum state court to which it has no meaningful contacts, ties or relations. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–472, 105 S.Ct. 2174, 2181–82. But if a defendant has directed its conduct toward serving a state's market, it may not be heard to complain that it could not have foreseen being haled into that state's courts.

### III.

■■■ Under the Illinois Business Corporation Act of 1983, a foreign corporation which "transacts business" in Illinois without obtaining a certificate of authority to do so is amenable to service of process through the Secretary of State. Ill.Rev. Stat. ch. 32, ¶ 5.30 (1987). On appeal, Austin bases its argument of ineffective service of process on the assertion that it did not transact business in Illinois. Although we are unable to locate any pertinent Illinois state court case interpreting ¶ 5.30, the plain language of that provision suggests that service of process is statutorily permissible with respect to a defendant that transacts business in Illinois, regardless of whether or not the service of process arises out of the defendant's trans-

action of business in the state. *Compare* Ill.Rev.Stat. ch. 32, ¶ 5.30 (1987) (permitting service of process on any foreign corporation that "transacts business in this State without having obtained a certificate of authority to transact business"), *with* Ill. Rev.Stat. ch. 110, ¶ 2–209(a) (1987) (granting state court jurisdiction over a defendant only with respect to "any cause of action *arising from* the doing of any [acts, such as the defendant's transaction of business in Illinois] which confer jurisdiction on the Illinois courts (emphasis added)").[7] Austin clearly transacted business within the state, for instance, when it contracted with the City of Streator, Illinois. Because the defendant transacted business in Illinois, although the business was unrelated to plaintiff's injury, service of process is proper under the Illinois statute.

Even if Austin had not transacted business in Illinois, the Illinois Code of Civil Procedure permits personal service of process outside the state upon "any person who is subject to the jurisdiction of the courts of this state." Ill.Rev.Stat. ch. 110, ¶ 2–209(b) (1987). Because the adequacy of service of process corresponds to the existence of personal jurisdiction over the defendant, our determination that personal jurisdiction is proper foreordains the conclusion that service of process was proper as well.

### IV.

The facts of this case establish adequate minimum contacts such that the exercise of personal jurisdiction over the defendant in Illinois is consistent with fair play and substantial justice. Moreover, defendant transacted business in Illinois such that service of process was appropriate. Therefore, the judgment of the district court is reversed and the case is remanded to the district court for adjudication of the merits.

**7.** This Court agrees with District Judge Plunkett that the task of a court faced with both a sufficiency of process challenge under ¶ 5.30 and a procedural jurisdiction issue under ¶ 2–209(a)(1) is to determine whether the defendant transacts business in Illinois. If the defendant does transact business in Illinois, service of process is proper. Personal jurisdiction, however, is only proper if the judge additionally finds that the action is one "arising from" the defendant's transaction of business in Illinois. *Business/Institutional Furniture, Inc. v. Sieges Cannone,* No. 86–7133 (N.D.Ill. Feb. 7, 1987), 1987 WL 6621; but see *Electronic Signals Products, Inc. v. Eastern Electronic Co., Ltd.,* 783 F.Supp. 1135 (N.D.Ill.1992) (assuming without discussion that the "arising from" language in ¶ 2–209 also applies to ¶ 5.30).

RIPPLE, Circuit Judge, concurring:

Judge Cummings' thoughtful opinion for the court certainly reaches the correct result and sets forth, in scholarly fashion, the unfortunate ambiguity created by *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). I write separately because I believe that the court's use of this ambiguity as the matrix of its analysis unnecessarily complicates the key point upon which our decision must rest. With respect to the transaction that underlies this cause of action, the defendant clearly had sufficient contacts, from both a quantitative and qualitative point of view, to make it fundamentally fair to require it to answer for its conduct in Illinois.

It is important to note that, under the so-called "stream of commerce" theory approach *or* under "the more stringent minimum contacts test," *ante* at 947, of the *Asahi* plurality, the nature of the defendant's relationship with the forum is of prime importance. While the so-called "stream of commerce" approach permits this factor to be considered "in light of other relevant factors," *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980), the burden on the defendant, a burden assessed by weighing its contacts with the forum, is always "a primary concern." *Id.*

Here, the defendant's contacts with Illinois are clearly sufficient. Austin sold fireworks to Bartolotta with the knowledge that its fireworks would reach Illinois for particular displays and thus purposefully directed its business activity with respect to these fireworks toward Illinois. On this crucial factor, our holding appropriately rests.

The court also notes, *ante* at n. 6, that the defendant's other activity in Illinois is relevant for the *limited* purpose of establishing that it purposefully directed its activity toward Illinois. However, only activity contemporaneous or antecedent to the incident at issue ought to be considered in this regard.

On this basis, I join the judgment of the court.