Joseph H. CARR, Plaintiff,

v.

POUILLOUX, S.A., a Foreign Corporation, Jean Vuarnet, Allegra, Inc., a Nevada corporation, and Orlux Distribution, Inc., a California corporation, Defendants.

No. 94–1241.

United States District Court,
C.D. Illinois,
Peoria Division.

Nov. 5, 1996.

Joseph J. Frank, Peoria, IL, for plaintiff.

Stephen J. Heine, Heyl, Royster, Voelker & Allen, Peoria, IL, for defendants.

## ORDER

MIHM, Chief Judge.

This matter is now before the Court on Defendant Sporoptic Pouilloux's ("Pouilloux") Motion for Relief from Final Judgment and Order Pursuant to F.R.C.P. 60 ("Motion for Relief") and Plaintiff's Response. For the reasons set forth below, the Motion for Relief [# 31] is DENIED.

### Factual Background

Plaintiff purchased a pair of Vuarnet sunglasses in the fall of 1990. On May 30, 1992, Plaintiff was injured when the sunglasses shattered. He brought suit pursuant to 28 U.S.C. § 1332 on May 31, 1994, alleging personal injury from an unreasonably dangerous product. On June 21, 1994, the Complaint was amended to allege that: (1) Pouilloux manufactures Vuarnet sunglasses; (2) Jean Vuarnet is involved in the design and manufacturing of the sunglasses; and (3) Allegra and Orlux are distributors of Vuarnet sunglasses in the United States. Pouilloux and Vuarnet are domiciled in France and Switzerland respectively. Allegra was a Nevada corporation that ceased operations more than two years prior to the filing of this suit. Orlux is incorporated in the state of California and is the current United States distributor of the Vuarnet line. All Defendants were served prior to October 24, 1994 and were required to answer or otherwise plead by December 1, 1994.

Plaintiff filed a Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55 on August 25, 1995, and default was entered against Defendants Pouilloux and Jean Vuarnet on September 21, 1995. On November 1, 1995, Defendants Orlux Distribution, Inc., and Allegra, Inc., were voluntarily dismissed without prejudice. An evidentiary hearing was held on December 14,

1995 to determine damages. The Court entered a default judgment in the amount of $283,000.00 against Pouilloux and Jean Vuarnet on December 15, 1995. Pouilloux filed this Motion for Relief on August 30, 1996, asking that the judgment be vacated for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 60(b)(4).

### Discussion

Federal Rule of Civil Procedure 60(b) gives the court discretion to relieve a party from a final judgment or order where the judgment is void. Fed.R.Civ.P. 60(b)(4). Pouilloux moves to vacate the judgment pursuant to Rule 60(b)(4) for lack of personal jurisdiction. Relief from judgment under Rule 60(b) is an "extraordinary remedy and is granted only in exceptional circumstances." *United States v. Zima*, 766 F.2d 1153, 1157 (7th Cir.1985). Nevertheless, if the court lacks personal jurisdiction over the defendant, the judgment is void and must be set aside. *Rodd v. Region Const. Co.*, 783 F.2d 89, 91 (7th Cir.1986).

However, in this context the Seventh Circuit has held:

> If the defendant, after receiving notice, chooses to let the case go to a default judgment, the defendant must then shoulder the burden of proof when the defendant decides to contest jurisdiction in a post-judgment rule 60(b)(4) motion.

*Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 401 (7th Cir.1986). Thus, the burden of proof shifts to Pouilloux in attempting to contest personal jurisdiction in its Rule 60(b)(4) motion; any conflicts between the affidavits submitted by Plaintiff and Pouilloux must be resolved in favor of the Plaintiff. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir.1987).

The court has jurisdiction over a defendant "who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." Fed.R.Civ.P. 4(k)(1)(A). Thus, in the present diversity case, this Court can exercise jurisdiction over Pouilloux only if an Illinois court could exercise jurisdiction. *FMC Corp. v. Continental Illinois National Bank*, 892 F.2d 1308, 1310 (7th Cir.1990). The statutory basis for jurisdiction is clear, since the reach of Illinois' long-arm statute, 735 ILCS 5/2–209, was amended to equate with the minimum contact requirements of federal due process in 1989. *Id.* at 1310–11, n. 5. Thus, the inquiry is really whether the exercise of jurisdiction is within constitutional parameters. *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir.1992).

> The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties or relations. By requiring that individuals have fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign, the Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985) (internal citations and punctuation omitted). A court must consider whether the assertion of personal jurisdiction over a nonresident defendant would comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Factors that may be considered include the burden on the defendant, the forum's interest in adjudicating the dispute, plaintiff's interest in obtaining convenient relief, the interstate system's interest in efficient resolution of controversy, and the interest of the states in furthering substantive social policies. *Burger King*, 471 U.S. at 475–76, 105 S.Ct. at 2184.

Pouilloux is a foreign corporation, which would necessitate the exercise of jurisdiction outside the national boundaries of the United States and require Pouilloux to defend itself in the judicial system of a foreign nation. *See Dehmlow*, 963 F.2d at 945. While the Court recognizes that Pouilloux's burden of litigating in the United States is significant, the remaining factors to be balanced weigh heavily in favor of the proper

exercise of jurisdiction under the facts of this case. Plaintiff is a resident of Illinois who suffered serious and permanent injury in the state of Illinois when the alleged defects in the Vuarnet sunglasses he was wearing surfaced. Thus, Plaintiff's interest in obtaining convenient relief for his injury is substantial. Furthermore, the state of Illinois has a strong interest "in assuring adequate remedial relief for its citizens who have been injured" and applying its products liability laws. *Id.* at 946; *Crowe v. Public Bldg. Com'n of Chicago,* 74 Ill.2d 10, 23 Ill.Dec. 80, 81, 383 N.E.2d 951, 952 (1978) (finding that the public policy behind imposing strict liability on the manufacturers, distributors and sellers of a defective product who "reaped a profit by placing a defective product in the stream of commerce" is well settled.) The interests of the interstate judicial system in the efficient resolution of controversy would also be served by adjudicating the case in the forum where Plaintiff and potential witnesses reside and where the injury occurred.

■ Pouilloux is positioned at the beginning of a vast distribution operation, where it realizes a great economic benefit from multiple sales in distant forums. *Giotis v. Apollo of the Ozarks, Inc.,* 800 F.2d 660, 667 (7th Cir.1986), *cert. denied,* 479 U.S. 1092, 107 S.Ct. 1303, 94 L.Ed.2d 158 (1987). It manufactures Vuarnet products for distribution by an American distributor with the knowledge that the distributor will offer these products for sale throughout the entire United States. There is a fundamental interest among states and nations in promoting corporate responsibility and preventing the release of unsafe products to the public. *See Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137, 1144 (7th Cir.1975) (directing courts to consider the economic realities of the case and finding that due process does not "allow a wrongdoing manufacturer to insulate himself from the long arm of the courts by using an intermediary or by professing ignorance of the ultimate destination of his products"). Companies that engage in international commerce should not expect to use the national boundaries that they willingly cross in exporting merchandise as a shield from liability when that merchandise is not safe and causes injury in another country. Thus, the Court finds

that the exercise of personal jurisdiction over Pouilloux under the facts of this case conforms with traditional notions of fairness and justice.

In determining whether the exercise of personal jurisdiction is proper, the relationship between the defendant and the forum state must also be considered. Where a forum seeks to assert jurisdiction over a nonresident defendant who has not consented to suit in the forum, this requirement is satisfied if the defendant has "purposely directed his activities at residents of the forum," and the litigation results from injuries related to such activities. *Burger King,* 471 U.S. at 471–72, 105 S.Ct. at 2181–82. "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Id.* at 473–74, 105 S.Ct. at 2183. The Supreme Court has held that federal courts may properly exercise jurisdiction over a manufacturer or distributor that makes efforts "to serve directly or indirectly, the market for its product in other states." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). If the corporation "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State," the due process requirements are satisfied and personal jurisdiction is proper. *Id.*

The Supreme Court's analysis of the minimum contacts required in a stream of commerce scenario was refined in *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Although unanimous in outcome, the justices were evenly divided on the proper scope of the minimum contacts rationale. Four justices, led by Justice O'Connor, employed a strict view of the minimum contacts analysis, finding that placing a product into the stream of commerce, without additional conduct indicating an intent or purpose to serve the market in the forum state, is not activity "purposefully directed toward the forum State." *Id.* 480 U.S. at 112, 107 S.Ct. at 1032. Writing for another group of four justices, Justice Brennan articulated a more

permissive view of minimum contacts which finds placement of a product into the stream of commerce alone sufficient to satisfy due process requirements:

> The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise. Nor will the litigation present a burden for which there is no corresponding benefit ... These benefits accrue regardless of whether that participant directly conducts business in the forum State, or engages in additional conduct directed toward that State.

*Id.* at 117, 107 S.Ct. at 1034–35.

Prior to the decision in *Asahi,* the Seventh Circuit consistently embraced the broader version of minimum contacts in the stream of commerce, as espoused by Justice Brennan. *See Mason v. F. LLI Luigi & Franco Dal Maschio Fu G.B.,* 832 F.2d 383, 386 (7th Cir.1987); *Nelson by Carson v. Park Industries, Inc.,* 717 F.2d 1120 (7th Cir.1983), *cert. denied,* 465 U.S. 1024, 104 S.Ct. 1277–78, 79 L.Ed.2d 682 (1984). The Seventh Circuit continues to find this approach "determinative" since it has not been rejected by a majority of the Supreme Court, refusing to "depart from Court precedent on a belief that present Supreme Court Justices would not readily agree with past Court decisions." *Dehmlow,* 963 F.2d at 947. It is clear that this Court can properly exercise personal jurisdiction over Pouilloux under the more permissive interpretation of minimum contacts, since Pouilloux admittedly contracted with Allegra and Orlux for the distribution of its products in the United States, thus placing its Vuarnet line into the stream of commerce with the state of Illinois as a probable destination. Indeed, Vuarnet sunglasses are sold at numerous locations in Illinois.

■ Pouilloux argues that it does not have minimum contacts with Illinois because its sole activity in the United States is the sale of its products to the distributor and it has neither offices nor employees in the United States. (Pouilloux's Memorandum of Law in Support of Motion for Relief at 4.) Despite Pouilloux's adamant assertions to the contrary, the Seventh Circuit has rejected the position that a manufacturer is absolved of all liability for a product once that product is transferred to a distributor for sale throughout the United States. *Nelson by Carson,* 717 F.2d at 1126–27.

> Such a seller, because of intervening levels of distribution, may not have mentally formed a purpose to sell its product to the particular individual buyer who is suing it, but the seller surely has purposefully chosen to sell generally to buyers in the forum state and reaps the economic benefit of doing so.

*Giotis,* 800 F.2d at 667. Knowledge of the distribution system in use is the key fact. *Nelson,* 717 F.2d at 1126–27. As set forth below, this Court finds that Pouilloux's position and relevant conduct at the start of the distribution system and continuing involvement in the operations of the American distributor demonstrate sufficient knowledge to establish personal jurisdiction even under the more restrictive view of Justice O'Connor in *Asahi.*

■ Pouilloux contracted exclusively with Orlux to distribute the Vuarnet line to a territory encompassing the entire United States. (Plaintiff's Response, Exhibit 1 at 1.) The state of Illinois is unquestionably included within the contractual distribution territory, and Vuarnet sunglasses are in fact advertised and offered for sale at numerous locations within the state. Furthermore, although Pouilloux claims that it has never exercised any control over where the distributor sent Vuarnet products, the terms of the distribution agreement indicate that Pouilloux intended to be actively involved in establishing and monitoring the operations of the chosen distributor. *Id.,* Exhibit 1. It authorized the use of its trademarks and set minimum sales requirements. *Id.,* Exhibit 1 at 2. The distribution contract mandates that the chosen distributor devote at least 3% of gross receipts to advertising and promotion of Vuarnet products in the United States. *Id.* Indeed, national advertising promotes an 800 number hotline to identify

local retailers who carry the Vuarnet line of products, and such retailers are present in Illinois. *Id.,* Exhibit 2. This type of advertising is an important factor in determining purposeful availment, and there is no evidence that Pouilloux was completely unaware of the scope of the distributor's efforts. *Giotis,* 800 F.2d at 668. Pouilloux reserved for itself the right to select the president of the distribution company due to the importance of the American market. (Plaintiff's Response, Exhibit 1 at 2.) Additionally, Pouilloux was solely responsible for quality control and the means of distribution, requiring the distributor to keep it strictly informed of the distribution network, as well as submit summaries of invoices sold. *Id.,* Exhibit 1 at 3–4. Most importantly, Pouilloux bound itself to "guarantee all defects of manufacture on the articles sold" by the distributor. *Id.,* Exhibit 1 at 4.

Thus, at a minimum, Pouilloux expressly marketed its products through a distributor who agreed to serve as its sales agent in the entire United States, including Illinois. Nothing in the distribution agreement indicates any intent to limit the distribution territory to less than the entire United States. Additionally, Pouilloux expressly reserved for itself the right to control the distribution system that brings the sunglasses into Illinois. It also received reports/invoices detailing Vuarnet sales by the distributor. Thus, Pouilloux knew or should have known that its products were being sold in Illinois. These factors were among those listed by Justice O'Connor as additional conduct indicating an intent or purpose to serve the market in the forum state. *Asahi,* 480 U.S. at 111–12, 107 S.Ct. at 1032. Pouilloux's guarantee of defective merchandise sold by the distributor is further evidence of its intent to participate in the United States market, which would include the state of Illinois, and weighs in favor of exercising jurisdiction here.[1] "[I]f a defendant has directed its conduct toward serving a state's market, it may not be heard to complain that it could not have foreseen being hauled into that state's courts." *Dehmlow,* 963 F.2d at 948.

▮▮▮▮ Alternatively, Pouilloux seeks to set aside the default judgment entered against it on December 15, 1995, pursuant to Federal Rule of Civil Procedure 60(b)(1). However, setting aside a default judgment is "a formidable task" for the movant. *Zuelzke Tool & Engineering Co., Inc. v. Anderson Die Castings, Inc.,* 925 F.2d 226, 229 (7th Cir.1991).

> The entry of a default judgment can be vacated under Rule 60(b) if a party shows (1) good cause for its default; (2) quick action to correct it; and (3) a meritorious defense.

*Id.* at 229 (citing *United States v. Di Mucci,* 879 F.2d 1488, 1495 (7th Cir.1989)). Again, Pouilloux let this case go to a default judgment and now bears the burden of proof in attempting to set aside the judgment. *Bally Export,* 804 F.2d at 401.

▮▮▮▮ Good cause can be shown where circumstances contributing to the entry of default were not within the "meaningful control" of the defaulting party. *Zuelzke,* 925 F.2d at 229. Pouilloux concedes that it received the Summons and Complaint filed by Plaintiff, but asserts that it mistakenly thought that Orlux, as its American distributor, would protect the interests and position of Pouilloux. Pouilloux also contends that it was not unreasonable to interpret Orlux's statement that it had "settled the matter" to include any liabilities of Pouilloux.

This argument is similar to that advanced by the defendant in *Zuelzke,* where defendant received assurances that it need not respond to the complaint filed because another party was going to be substituted as the sole defendant. *Id.* Thus, the defendant argued that the events leading to the default judgment were beyond its control because it had reasonably relied on the representations made by another. *Id.* This conduct was found equivalent to a voluntarily choice not to exercise control and protect its interests in the pending litigation, and the responsibility to assert any defenses or objections remained with the defendant. *Id.* In rejecting

---

**1.** If the Court were to reach the conclusion that it lacks personal jurisdiction over Pouilloux on the facts of this case, Pouilloux's contractual assumption of liability for defective products would be rendered meaningless.

this argument, the Seventh Circuit held that "where a party willfully, albeit through ignorance or carelessness, abdicates its responsibilities, relief from judgment under Rule 60(b) is not warranted." *Id.* (citations omitted.) Thus, Pouilloux has not demonstrated good cause for neglecting to protect its own interests in the present litigation and therefore fails to satisfy the first prong of *Zuelzke.*

Pouilloux must also demonstrate that it took quick action to correct the default. It should have been apparent to Pouilloux that its reliance on Orlux was misplaced when it learned that the Court entered default against it. Even though default was entered in September 1995 and the default judgment was entered in December 1995, Pouilloux did not file its Motion for Relief until August 1996. In *Zuelzke,* a defendant who filed for relief four months after receiving notice of the default judgment was found not to have taken prompt corrective action. *Id.* at 230. Similarly, in the present case, Pouilloux's conduct in waiting eight months after entry of the default judgment cannot reasonably be described as prompt action.[2]

 The third prong of *Zuelzke* requires demonstration of a meritorious defense. *Id.* at 229. Although these criteria are not expressly addressed in its Motion, Pouilloux's meritorious defense is presumably the perceived lack of personal jurisdiction, which the Court has already rejected herein. However, even if Pouilloux could articulate some other defense, a meritorious defense "standing alone" cannot excuse carelessness. *Id.* at 230. Pouilloux has failed to demonstrate any good cause for its failure to answer Plaintiff's Complaint, and regardless of whether or not it can present a meritorious defense, Pouilloux has failed to present its defense to the Court promptly. *Id.* Thus, having determined that Pouilloux cannot satisfy the criteria required to set aside a default judgment under *Zuelzke,* the Court finds that Pouilloux's failure to respond to Plaintiff's com-

plaint was not excusable neglect, and the application for relief cannot be granted.

### Conclusion

For the foregoing reasons, the Court finds that Pouilloux has failed to meet its burden of proof under either Federal Rule of Civil Procedure 60(b)(4) or 60(b)(1), and the default judgment should not be vacated. Accordingly, Pouilloux's Motion for Relief [# 31] is DENIED. This matter is terminated.

---

**2.** Three months has been found to be too long to constitute prompt responsive action. *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.,* 726 F.2d 1202, 1208 (7th Cir.1984). *See also Anilina Fabrique de Colorants v. Aakash Chemicals,* 856 F.2d 873, 879 (7th Cir.1988) (finding that a de-

fendant acted promptly when the request for relief was filed 10 days after the entry of the default judgment.) Key to the finding in *Anilina* was the fact that the defendant also attempted to cure his default by filing the proposed answer and counterclaim. *Id.* at 879.