**William KOPFMAN, Plaintiff,**

v.

**ENSIGN RIBBON BURNERS, LLC, Defendant.**

Case No. 10 C 8115.

United States District Court, N.D. Illinois, Eastern Division.

Aug. 8, 2011.

Joseph Gerald Ryan, Gordon & Centracchio, LLC, Chicago, IL, for Plaintiff.

Nicholas J. Scarpelli, Anna T. Chapman, Scarpelli & Brady, LLC, Park Ridge, IL, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

MATTHEW F. KENNELLY, District Judge:

William Kopfman has sued Ensign Ribbon Burners, LLC to recover damages for injuries he suffered allegedly due to a defect in a product that Ensign manufactured. Ensign has moved to dismiss for lack of personal jurisdiction and improper venue. For the reasons set forth below, the Court denies Ensign's motion.

### Facts

The following facts are taken from Kopfman's second amended complaint and the parties' submissions on the motion to dismiss, including an affidavit and deposition testimony.

Ensign has been in business since 1907. Its principal place of business is in New

York. Ensign manufactures ribbon burners, air-and-gas mixers, ignition and safety controls, and combustion supply systems and controls for various industries. In 2010, Ensign sold its products to customers in thirty-eight states and five Canadian provinces. Of these sales, 1.35% were to customers in Illinois. The parties agree that Ensign is not licensed to do business in Illinois and does not have in this state either an agent for service of process or other agents, offices, sales representatives, or employees.

Ensign operates a public website on which it displays photographs of its products. The website contains a "Contact Us" page that allows a viewer to request information from Ensign. Customers cannot purchase products directly from the website. Typically, customers contact Ensign via phone or facsimile to place orders. Ensign customizes some of its products for specific customers, including Illinois customers. Ensign provides customer service via e-mail or telephone upon request.

Kopfman alleges that Ensign engages in significant business activities in Illinois. From January 2007 through May 2011, Ensign made 135 separate sales to approximately twenty customers in Illinois as well as 600 separate purchases from Illinois vendors. Ensign's president and CEO, John Calallo, routinely travels to Illinois to visit customers and attend trade shows. His last trip to Illinois occurred in March 2011 for a bakery industry trade show, which he attends annually. Calallo has visited Illinois customers of Ensign approximately twelve times during his ten-year tenure as president and CEO.

Kopfman's employer, Campbell International, Inc. d/b/a Fish Oven Equipment, has been an Ensign customer since at least 1994. Ensign ships its products directly from New York to Fish Oven in Wauconda, Illinois.

Ensign does not utilize any paid advertising other than limited advertising for a new patented process. Ensign mails product catalogs to customers upon request and accepts complimentary listings in trade publications. These publications are distributed throughout the United States and Canada, including in Illinois. Ensign also contacts customers directly to inform them of the availability of new products.

In August 2010, Ensign manufactured, sold, and directly shipped one of its products, an inspirator, to Fish Oven Equipment. On August 10, 2010, Kopfman and another Fish Oven Equipment employee attempted to use the inspirator to test-fire an oven. Kopfman alleges that gas built up in the burner inlet pipe and caused an explosion. Kopfman fell backwards and sustained severe injuries that eventually required him to undergo a hip replacement. According to Kopfman, the explosion occurred because Ensign negligently left a rag in the inspirator before packaging it and shipping it to Fish Oven.

### Discussion

**1. Personal Jurisdiction**

Once a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing personal jurisdiction. *Jennings v. AC Hydraulic A/S,* 383 F.3d 546, 548 (7th Cir. 2004). The plaintiff need only make out a *prima facie* case of personal jurisdiction. *Purdue Research Found. v. Sanofi–Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003). If the defendant submits affidavits in support of its Rule 12(b)(2) motion to dismiss, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction."

*Id.* at 783. Disputes in the evidence are resolved in the plaintiff's favor. *Id.* at 782, 783.

■ In a diversity case like this one, the plaintiff must show that a court in the forum state (here Illinois) would have jurisdiction over the defendant and that the exercise of jurisdiction does not violate the defendant's due process rights. *See Jennings,* 383 F.3d at 548–49. In Illinois, these requirements merge, because Illinois' long-arm statute permits a court to exercise personal jurisdiction on any basis permitted by the Illinois and United States Constitutions. 735 ILCS 5/2–209(c). The Seventh Circuit has found no "operative difference" between state and federal due process in this regard. *Kinslow v. Pullara,* 538 F.3d 687, 691 (7th Cir.2008). For this reason, the Court focuses on federal due process requirements.

Due process permits a court to exercise personal jurisdiction over a non-resident defendant if it has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). More specifically, a court may exercise personal jurisdiction over a defendant consistent with due process if "the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of [the forum state's] laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). A defendant that purposefully avails itself of the privilege of conducting business in the forum state should "reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

■ A court may exercise "specific jurisdiction" if the defendant has purposefully directed his activities at the forum state and the alleged injury arises out of the defendant's forum-related activities. *Tamburo v. Dworkin,* 601 F.3d 693, 702 (7th Cir.2010) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). To determine whether specific jurisdiction exists, a court

> (1) identif[ies] the contacts the defendant has with the forum; (2) analyze[s] whether these contacts meet constitutional minimums and whether exercising jurisdiction on the basis of these minimum contacts sufficiently comports with fairness and justice; [and] (3) determine[s] whether the sufficient minimum contacts, if any, arise out of or are related to the causes of action involved in the suit.

*GCUI–Emp'r Ret. Fund v. Goldfarb Corp.,* 565 F.3d 1018, 1023 (7th Cir.2009). The Court assesses the totality of Ensign's contacts with Illinois; it does not consider each contact in isolation. *Mid–America Tablewares, Inc. v. Mogi Trading Co.,* 100 F.3d 1353, 1361–62 (7th Cir.1996).

■ Ensign argues that operation of a passive website—that is, a website without interactivity—does not support the existence of specific jurisdiction in any particular state. The Seventh Circuit, however, has rejected the active-passive distinction as a determinative factor. *See, e.g., uBID, Inc. v. GoDaddy Grp., Inc.,* 623 F.3d 421, 431 n. 3 (7th Cir.2010) ("When a plaintiff alleges that some of the defendant's contacts occurred through a website, the in-

teractivity of that website is relevant to, but not dispositive of, the sufficiency of those contacts.").

■ Ensign argues that the Court cannot exercise specific jurisdiction solely because Ensign placed its products into a stream of commerce. If, however, an out-of-state entity's sale of an allegedly defective product is not an isolated occurrence " 'but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its products in other States, it is not unreasonable to subject it to suit in one of those States.' " *Richter v. INSTAR Enters. Int'l, Inc.*, 594 F.Supp.2d 1000, 1014 (N.D.Ill.2009) (quoting *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. 559). Ensign made numerous sales and direct shipments to customers in Illinois. This included an ongoing customer relationship with Fish Oven that extended over a period of several years.

In addition, Ensign's CEO made repeated visits to trade shows and customers in Illinois for the purpose of marketing Ensign's products and generating sales. Ensign also customized products for Illinois customers, including Fish Oven. And although the parties dispute whether Ensign actively solicits business in Illinois, there is evidence that it mails catalogs to Illinois customers upon request. Certain of these contacts, standing alone, likely would be insufficient to establish specific jurisdiction. But taken together with the evidence of Ensign's repeated sales to Illinois customers and its extended customer relationship with Fish Oven, the Court has no hesitation in concluding that Ensign has purposely directed its sales and marketing activities at Illinois. It "did not merely set

its products adrift on a stormy sea of commerce which randomly swept products into Illinois. Instead, defendant's actions were part of a concerted attempt to serve the [Illinois] market...." *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 948 (7th Cir.1992).

This finding is consistent with the Seventh Circuit's recent decision in *State of Illinois v. Hemi Grp. LLC*, 622 F.3d 754 (7th Cir.2010). In that case, the court found that a cigarette company located in New Mexico had contacts with Illinois sufficient to justify specific jurisdiction based on its shipment of products directly to Illinois and its operation of an interactive website. Ensign does not maintain an interactive website, but its additional sales-related contacts with Illinois and its ongoing relationship with Fish Oven more than make up for this. The Court concludes that Ensign has contacts with Illinois sufficient to allow the Court to exercise specific jurisdiction.

■ Ensign argues that even if the Court finds sufficient contacts, the exercise of specific jurisdiction would not comport with due process. In this regard, the relevant factors include "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. [Courts] must also weigh the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Asahi Metal Indus. Co. v. Superior Court of Calif.*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (internal quotation marks and citation omitted).[1]

---

1. This quote is taken from part II.B of the decision in *Asahi,* the only part of Justice O'Connor's plurality opinion that garnered a majority of the Court.

These factors strongly weigh in favor of the exercise of jurisdiction over Ensign. Ensign's representatives regularly travel to Illinois and deal with customers here; thus requiring the company to litigate a case in Illinois is not unreasonably burdensome. *See Dehmlow,* 963 F.2d at 945. Kopfman, of course, has an interest in obtaining relief for his injuries in Illinois, where he lives and where the injuries occurred. Illinois likewise has an interest in ensuring that its injured citizens may obtain redress here and in applying its products liability laws. *See id.* at 945–46. Finally, judicial economy is served by adjudicating the case where the injury occurred, given the likely availability of evidence and witnesses in Illinois. *See id.* at 946.

Finally, the Court must determine whether Kopfman's claim arises from or is related to Ensign's relevant contacts with Illinois. In making this determination, the Court does not simply aggregate all of Ensign's contacts with Illinois. Ensign's prior dealings with Fish Oven, however, are sufficiently similar to the current transaction that it is appropriate to consider all of them in determining whether the Court may appropriate exercise jurisdiction. Ensign's continuing relationship with Fish Oven is sufficient to support personal jurisdiction in this case. *See Heritage House Rests., Inc. v. Cont'l Funding Grp., Inc.,* 906 F.2d 276, 281 (7th Cir.1990).

## 2. Venue

Under 28 U.S.C. § 1391(a)(2), a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Ensign argues that venue is improper in Illinois because the significant acts that gave rise to the suit took place in New York, in particular any negligent conduct that occurred in the manufacture and shipment of the allegedly defective inspirator.

■ The explosion that caused Kopfman's injuries took place in Illinois. As a result, a substantial part of the events giving rise to his claim occurred in the Northern District of Illinois, making this district a proper venue. *See Sentry Ins. Co. v. Bull HN Info. Sys., Inc.,* No. 97 C 4211, 1999 WL 51801, at *3 (N.D.Ill. Jan. 29, 1999) (denying a motion to dismiss for improper venue in Illinois because the computer fire causing plaintiff's injury occurred in Illinois).

## Conclusion

For the reasons stated above, the Court denies defendant's motion to dismiss [# 21] and directs defendant to answer the second amended complaint by no later than August 29, 2011. Rule 26(a)(1) disclosures are due on the same date. The case is set for a status hearing on September 7, 2011 at 9:30 a.m. for the purpose of setting a discovery and pretrial schedule. Counsel should be prepared to propose an appropriate schedule at that time.