# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-2157

PAMELA J. JENNINGS, individually
and as personal representative of
the estate of JAMES R. JENNINGS,

*Plaintiff-Appellant,*

v.

AC HYDRAULIC A/S,

*Defendant-Appellee.*

———————

Appeal from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. 2:02-cv-0256-LJM-WGH—**Larry J. McKinney**, *Chief Judge.*

———————

ARGUED NOVEMBER 4, 2003—DECIDED SEPTEMBER 2, 2004

———————

Before EASTERBROOK, ROVNER, and EVANS, *Circuit Judges.*

ROVNER, *Circuit Judge.* As James Jennings was working
under a forklift that was hoisted by a floor jack, the jack
allegedly failed and the forklift fell on Jennings and crushed
him. Jennings died as a result of this accident, and his widow
sued the manufacturer of the jack, AC Hydraulic A/S, in

Indiana state court.[1] AC Hydraulic removed the suit to federal court on diversity grounds and later moved for dismissal for lack of personal jurisdiction. The district court granted the dismissal, and we affirm because Jennings did not demonstrate that AC Hydraulic had sufficient contacts with Indiana to establish personal jurisdiction.

In conjunction with AC Hydraulic's motion to dismiss, the parties presented the following undisputed facts about the extent of AC Hydraulic's contacts with Indiana. AC Hydraulic manufactures various types of jacks and has its principal place of business in Denmark. It is not an Indiana corporation, nor is it licensed to do business in the state. It does not maintain there a registered agent for service of process, an office, a telephone listing, a bank account, property, or any employees. AC Hydraulic distributes more than 80% of its products in the world export markets. As for distribution in the United States, on occasion AC Hydraulic has sold its products to two distributors in Florida, but the record does not contain any information on the volume of sales to these distributors nor precisely where the distributors resell the products. AC Hydraulic maintains a website (www.ac-hydraulic.com) with English translations that is accessible throughout the United States. On the website AC Hydraulic provides contact information and descriptions of its various product lines, but consumers cannot order its products via this website. Mrs. Jennings alleged that Mr. Jennings's employer, an Indiana corporation named BGM Equipment, purchased the jack at issue in this suit, but she did not cite to any affidavits or other evidence to substantiate this assertion or present any further details on this alleged purchase (such as where, when, and from whom). She also

---

[1] Mrs. Jennings also sued the alleged distributor of the jack, Stertil-Koni, USA, Inc., but it was dismissed from the suit during the state court proceedings based on the stipulation of the parties. Accordingly, we have removed Stertil-Koni from our caption.

identified the serial number on the jack, but did not present any tracking information based on this serial number.

As noted above, the district court dismissed Jennings's suit for lack of personal jurisdiction over AC Hydraulic. Personal jurisdiction determines, in part, where a plaintiff may hale a defendant into court. Once a defendant moves to dismiss for lack of personal jurisdiction, as AC Hydraulic did here, the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In diversity cases, such as this one, a federal court must determine if a court of the state in which it sits would have personal jurisdiction over the defendant. *Id.* at 779. Thus, the jurisdictional inquiry begins with an application of the statutory law of the forum state, in this case, Indiana's equivalent of a long-arm statute, Trial Rule 4.4(A). *Id.* Although we recognize that Jennings gave only cursory treatment to this issue in her opening brief on appeal, we will assume, as did the district court, that AC Hydraulic's conduct was sufficient to establish personal jurisdiction under Indiana's long-arm statute. We move to the principal issue that the parties contest on appeal—whether exercising personal jurisdiction in Indiana over AC Hydraulic comports with due process.

Due process limits when a state may exercise personal jurisdiction over nonresident defendants. *Asahi v. Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 108 (1987); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). This limitation allows potential defendants to structure their contacts with different forums so as to plan where their business activities will and will not render them liable to suit. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985); *World-Wide Volkswagen*, 444 U.S. at 297. Personal jurisdiction comes in two forms (so-called "general" and "specific" jurisdiction), *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1984),

and Jennings argues that a court in Indiana may exercise specific jurisdiction over AC Hydraulic because the basis for the suit arises out of or is related to AC Hydraulic's contacts with Indiana, namely, the manufacture and distribution of the jack that is alleged to have contributed to Mr. Jennings's death. To establish specific jurisdiction under the familiar "minimum contacts" analysis, a plaintiff must show that the defendant has purposefully availed itself of the privilege of conducting activities within the forum state, *Asahi*, 480 U.S. at 108-09; *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), and that the exercise of personal jurisdiction over that defendant would comport with "traditional notions of fair play and substantial justice," *Asahi*, 480 U.S. at 113; *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In this case, Jennings relies on two main theories in an effort to establish specific jurisdiction in Indiana over AC Hydraulic: (1) AC Hydraulic advertised its products to consumers in the United States, including Indiana residents, by maintaining an English-translated website, and (2) AC Hydraulic sold some of its products to distributors in Florida, thus placing them in the "stream of commerce" of the U.S. market, which includes Indiana.

Jennings's first argument, that personal jurisdiction may be premised on the maintenance of Internet sites, sweeps too broadly. Other circuits have recognized that the operation of an "interactive" website, such as one (although this is not an exclusive definition) on which consumers can order the defendant's goods or services, may subject a defendant to the exercise of personal jurisdiction (either specific or general). *See*, *e.g.*, *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 399 (4th Cir. 2003); *Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472, 483 (6th Cir. 2003) (per curiam); *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 513 (D.C. Cir. 2002). We need not decide in this case what level of "interactivity" is sufficient to establish personal jurisdiction based on the opera-

tion of an interactive website. Rather, it is enough to say that this logic certainly does not extend to the operation of a "passive" website, such as the one that AC Hydraulic maintains, which merely makes available information about the company and its products. The exercise of personal jurisdiction based on the maintenance of a passive website is impermissible because the defendant is not directing its business activities toward consumers in the forum state in particular. *Cf. Burger King*, 471 U.S. at 476 (explaining that personal jurisdiction may be established without showing physical presence of defendant in forum state as long as its business activities are "purposefully directed" toward consumers in that state). With the omnipresence of the Internet today, it is unusual to find a company that does not maintain at least a passive website. Premising personal jurisdiction on the maintenance of a website, without requiring some level of "interactivity" between the defendant and consumers in the forum state, would create almost universal personal jurisdiction because of the virtually unlimited accessibility of websites across the country. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712-13 (4th Cir. 2002). This scheme would go against the grain of the Supreme Court's jurisprudence which has stressed that, although technological advances may alter the analysis of personal jurisdiction, those advances may not eviscerate the constitutional limits on a state's power to exercise jurisdiction over nonresident defendants. *See Hanson*, 357 U.S. at 250-51; *see also ALS*, 293 F.3d at 711. This court has never addressed this argument as applied to passive websites, but we now join the several circuits that have addressed and rejected it, *see, e.g.*, *ALS*, 293 F.3d at 714; *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1297 (10th Cir. 1999); *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 337 (5th Cir. 1999), and hold that a defendant's maintenance of a passive website does not support the exercise of personal jurisdiction over that defendant in a particular forum just because the website can be accessed there. Thus, the district court in this

case concluded correctly that AC Hydraulic's maintenance of a passive website did not contribute to Jennings's effort to establish specific jurisdiction in Indiana.

Jennings's second argument, that AC Hydraulic should be subject to specific jurisdiction in Indiana because it placed its products in the "stream of commerce," is equally unpersuasive. If a defendant delivers products into a stream of commerce, originating outside the forum state, with the awareness or expectation that some of the products will be purchased in the forum state, that defendant may be subject to specific jurisdiction in the forum state. *See World-Wide Volkswagen*, 444 U.S. at 297-98; *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 946-47 (7th Cir. 1992).[2] In *World-Wide Volkswagen*, the Supreme Court held that personal jurisdiction was lacking because, in part, there was no evidence in the record that any products that the defendants distributed (in that case, automobiles) were ever sold to retail customers in the forum state. 444 U.S. at 298. Similarly in this case, Jennings produced no evidence that any of AC Hydraulic's products (including the jack at issue in this suit) were ever sold in Indiana. Jennings claims that an Indiana company purchased the jack, but even if we were to accept this unsubstantiated allegation as evidence, Jennings does not tell us *in* what state or from whom this company purchased the jack. Additionally, Jennings established that AC Hydraulic sells some of its products to two distributors in

---

[2] We note that the Supreme Court's decision in *Asahi*, 480 U.S. at 111, left open the question whether a plaintiff making a stream-of-commerce argument needs to make an additional showing that the defendant purposefully directed its business activities toward the forum state. We need not resolve this question, however, because Jennings has not made the threshold showing—there is no evidence, as we explain below, that AC Hydraulic had an awareness or expectation that some of its products would be purchased in Indiana.

Florida, but she did not present any volume information for these sales or provide us with information about where the distributors resell the products, so the scope of any alleged distribution in the rest of the United States, and whether any AC Hydraulic products have been distributed in Indiana, cannot be determined. The bottom line is that, relying on the sparse evidence that Jennings presented, we do not know how the jack in question got to Indiana, or if any other AC Hydraulic products have ever been sold there. It is possible that the "unilateral activity" of a third party, rather than the defendant's distribution scheme, landed the jack in Indiana, which is the very scenario that doomed the plaintiffs' case in *World-Wide Volkswagen. Id.*

With the free flow of commerce within the United States today, it may seem counterintuitive that a foreign manufacturer, such as AC Hydraulic, who sells goods to a distributor in the United States should not be assumed to have the expectation that its goods may end up for sale in any one of the fifty states. But the Supreme Court stressed in *World-Wide Volkswagen* that, although the United States was meant to be a "common market," state lines are not "irrelevant for jurisdictional purposes." *Id.* at 293. For this reason, at least in diversity cases,[3] personal jurisdiction may not be exercised over a nonresident defendant unless "minimum contacts" between the particular state in which the court sits and the defendant have been established. *See Burger King*, 471 U.S. at 474 ("Notwithstanding these considerations [involving modern transportation and communication], the constitutional

---

[3] We note that Fed. R. Civ. P. 4(k)(2) allows courts to exercise personal jurisdiction "over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state" for claims arising under federal law. We do not consider here, however, whether it would be permissible to apply this theory of "nationwide contacts" to diversity cases, such as this one, because the parties have not argued for any such extension.

touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State."). In this case, Jennings did not meet her burden of demonstrating that AC Hydraulic had sufficient contacts with Indiana and, consequently, the district court properly dismissed her suit for lack of personal jurisdiction.

There is one final issue left to address—Jennings's bare-bones suggestion that, if she did not succeed in establishing personal jurisdiction over AC Hydraulic in Indiana, the district court should have transferred the suit to another forum (such as a federal court in Florida) rather than dismiss her suit. AC Hydraulic argues that Jennings waived this request by failing to move for transfer before the district court and by failing to develop her argument on appeal. Even if the district court should have considered transfer *sua sponte, see, e.g., Phillips v. Seiter*, 173 F.3d 609, 610-11 (7th Cir. 1999), we cannot find error with the district court's judgment because Jennings has not explained why it would be permissible for another forum, such as a court in Florida, to exercise personal jurisdiction over AC Hydraulic. *See DDI Seamless Cylinder Int'l, Inc. v. Gen. Fire Extinguisher Corp.*, 14 F.3d 1163, 1168 (7th Cir. 1994) ("An issue must be pressed, must be argued and supported; a bare conclusion is not enough."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs."). For instance, Jennings has not analyzed whether AC Hydraulic's contacts with Florida would be sufficient to exercise personal jurisdiction under Florida's long-arm statute. Additionally, Jennings has not pointed to any evidence showing that AC Hydraulic sold, in particular, the jack at issue in this suit to one of the distributors in Florida (or, alternatively, has not argued that it is sufficient that AC Hydraulic sold similar jacks to the distributors in Florida or that general jurisdiction is permissible). It is

possible, for example, that AC Hydraulic sold the jack to a distributor in Canada or Mexico and, thereafter, the jack ended up in Indiana without any contact with Florida. Finally, Jennings has not alleged that dismissal will result in harm, such as her being barred from refiling the suit in a court in Florida by the relevant statutes of limitations. In fact, we note that Indiana law provides for what it calls a "Journey's Account Statute,"[4] Ind. Code § 34-11-8-1, that extends any relevant limitations period so as to preserve the option to refile suit should a plaintiff fail, based on grounds such as lack of jurisdiction, before an adjudication of the suit's merits (with certain exceptions not relevant here). *See Cox v. Amer. Aggregates Corp.*, 684 N.E.2d 193, 195 (Ind. 1997) ("[T]he statute enables an action dismissed for lack of personal jurisdiction in one state to be refiled in another state despite the intervening running of the statute of limitations."); *McGill v. Ling*, 801 N.E.2d 678, 683-84 (Ind. Ct. App. 2004). A court in Florida likely would apply this Indiana law because Florida's choice-of-law doctrine employs a "significant relationship" test in deciding which state's statute of limitations to apply. Because the jack allegedly contributed to Mr. Jennings's death in Indiana, this test likely would dictate that a court in Florida apply Indiana's law that extends any limitations period. *See Fulton County Adm'r v. Sullivan*, 753 So. 2d 549, 552-53 (Fla. 1999) (per curiam) (applying another state's statute that tolls limitations period); *Merkle v. Robinson*, 737 So. 2d 540, 542 (Fla. 1999) (per curiam).

---

[4] The law is called the "Journey's Account Statute" because, at common law, suits often were dismissed on technical grounds. In such cases, the plaintiff could file a writ known as a Journey's Account to preserve the cause of action. Then, the time to renew suit was computed theoretically with reference to the time necessary for plaintiff's counsel to *journey* to the proper court to refile. *McGill*, 801 N.E.2d at 683.

To summarize, the district court properly dismissed Jennings's suit because she had not established personal jurisdiction in Indiana over AC Hydraulic, and neither the record nor the equities supports the transfer of her suit to a federal court in Florida.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*