In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-19-00389-CV
_____

**SKYLIFT, INC., Appellant**

**V.**

**JESSICA BAGLEY NASH AND JACOB BAGLEY, INDVIDUALLY AND AS REPRESENTATIVES OF THE ESTATE OF CHARLES BAGLEY, Appellees**

**On Appeal from the 136th District Court**
**Jefferson County, Texas**
**Trial Cause No. D-200,406**

**MEMORANDUM OPINION**

Jessica Bagley Nash and Jacob Bagley, Individually and as Representatives of the Estate of Charles Bagley ("Appellees" or "Plaintiffs") sued multiple defendants, including Motiva Enterprises LLC, The Newtron Group, LLC, Newtron Beaumont, LLC, Nesco, LLC, and Skylift, Inc. (collectively, "Defendants").[1] In this

---

[1] Motiva and the Newtron entities are not parties to this appeal.

1

interlocutory appeal, Defendant Skylift, Inc., challenges the trial court's order overruling its special appearance. We reverse and render.

## I. Background

Plaintiffs sued the Defendants, including Skylift, following the death of Charles Bagley ("Decedent"). The Plaintiffs alleged that while part of a maintenance crew performing work on a right-of-way at Motiva's refinery in Port Arthur, Texas, the Decedent sustained fatal injuries when a piece of equipment struck him. The Plaintiffs identified the particular piece of equipment as a Skylift Mini-Derrick S-6000 Low Pro crane. The Plaintiffs sued Nesco and Skylift alleging that the crane was defective and/or unreasonably dangerous; that they designed, constructed, marketed, and/or placed the product into the stream of commerce; that they were negligent in design, manufacturing, and/or assembling the product; and that they were negligent in after-market/post-sale conduct and asserted that Nesco and Skylift were strictly liable under Texas Law.

Skylift filed a special appearance alleging the trial court lacked jurisdiction, supported by the affidavit of Skylift's former President George Wojnowski. In its special appearance, Skylift argued that the Plaintiffs failed to meet their initial pleading burden, and the trial court lacked both general and specific jurisdiction, as minimum contacts could not be established with Texas because: (1) it did not engage

2

in continuous and systematic contacts with Texas; (2) the lawsuit did not arise out of Skylift's contacts with Texas; and (3) Skylift did not purposefully avail itself of the privilege of conducting business in Texas. Wojnowski averred in his affidavit that Skylift was incorporated in Ohio and had its principal place of business there; is not a resident corporation of Texas; does not have a place of business or office in Texas; does not own property in Texas; has no employees in Texas; does not advertise or solicit business in Texas; does not create, control, or employ any distribution system that may have brought a product to Texas; does not market products through a distributor who has agreed to serve as a sales agent in Texas; and has not purposely done any act or consummated any transaction within Texas.

The Plaintiffs subsequently amended their petition, and the parties conducted discovery pertaining to the special appearance.[2] Nesco also filed a crossclaim against Skylift for indemnity and opposed Skylift's special appearance. The jurisdictional evidence included Wojnowski's affidavit, the deposition testimony of Skylift's current president Michael Naughton,[3] printouts from Skylift's website, printouts from Nesco's website, and a copy of the sales invoice for the crane at issue.

---

[2] The Plaintiffs' first amended petition was the live pleading at the time of the hearing on the special appearance.

[3] The record established that Naughton was very recently named the president of Skylift as a result of an organizational change, but prior to that had been the company's chief operations officer (COO).

3

The evidence established that Skylift manufactures easement specialty equipment designed to fit through gates thirty-six inches wide and they can then expand. In his deposition, Naughton, as Skylift's corporate representative, testified that Skylift sold its products through a distributor network, and it did not service its own products, rather it relied on the distributors for that. Skylift's network of distributors consists of four or five major distributors, including Nesco, which Skylift listed as a distributor on its website. Naughton testified that Skylift employees occasionally travel to the offices of distributors to discuss pricing, production schedules, or future forecasts. Naughton testified Skylift representatives visited Nesco's corporate headquarters in Indiana the previous year. Nesco has locations in Texas; however, no evidence was produced in the hearing to establish that Skylift representatives had been to any of Nesco's offices in Texas. Additionally, Naughton testified he did not know whether Nesco has distributorships in Texas. Naughton denied that Skylift provided literature and pictures for their distributors, explaining that the distributors of Skylift products were "on their own" to obtain information about Skylift's products. He also explained Skylift did not tell the distributors "how to sell to their . . . customer." According to Naughton, Skylift generally knows what territories the distributors sell products into, but its contracts with its distributors do not spell the locations out. He also testified that Skylift has

4

most of the United States covered. Neither Nesco, nor Plaintiffs, provided evidence contradicting Naughton's testimony about how Skylift distributes its products.

Naughton identified Time Manufacturing as a Texas vendor from whom Skylift purchases Versalift booms. Skylift attaches these booms to some of their machines but did not do so on the crane allegedly involved in the casualty at the Motiva refinery in Texas.[4] Naughton denied Skylift used booms purchased by Texas vendors on its Mini-Derrick products, explaining Skylift manufactured those booms used on its Mini-Derrick products. He explained Skylift does not travel to the locations it uses to purchase booms and does not have a service center. That said, he agreed that Skylift does have an employee who answers calls from customers about problems that may arise with equipment manufactured by Skylift, characterizing the service as a "technical help line." Naughton stated he did not know how the Mini-Derrick involved in the casualty ended up in Texas, but he thought Nesco had probably rented the equipment to a contractor. While Naughton did not know how much equipment Skylift manufactured that is currently in use in Texas, he doubted it had manufactured more than ten pieces of equipment currently in use in Texas.

---

[4] The Skylift website lists Time Manufacturing as a distributor, rather than as a vendor; however, Naughton explained Time Manufacturing was not one of its distributors. He stated he does not know why they are listed on their website as a "distributor."

Naughton estimated the number of Skylift cranes in use in the United States at between 1,600 and 2,000. Other evidence admitted during the hearing consists of pages from Nesco's website advertising specialty equipment manufactured by others, and it shows Nesco rents specialty equipment made by manufacturers other than Skylift.

In its special appearance, Skylift argued the allegations in Plaintiffs' pleadings were insufficient to invoke the Texas long-arm statute, but it has not pursued that argument in its appeal.[5] Skylift challenged both general and special jurisdiction in the trial court, and it also challenges these jurisdictional claims on appeal. Following a hearing, the trial court overruled Skylift's special appearance without issuing findings of fact or conclusions of law.

## II. Burden of Proof and Standard of Review

A plaintiff has the initial burden to plead sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013); *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). If the plaintiff pleads sufficient jurisdictional allegations, the nonresident defendant filing a special appearance then has the burden to negate all bases of personal jurisdiction alleged by the plaintiff.

---

[5] *See infra* footnote 6.

*Moncrief Oil*, 414 S.W.3d at 149; *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002). Once the defendant produces evidence negating jurisdiction, the burden shifts to the plaintiff to establish the court's jurisdiction over the defendant. *Kelly*, 301 S.W.3d at 658–59. If, however, a plaintiff fails to plead sufficient facts to bring the defendant within the long-arm statute, the defendant must only prove it does not live in Texas to negate jurisdiction. *Id.*; *Booth v. Kontomitras*, 485 S.W.3d 461, 476 (Tex. App.—Beaumont 2016, no pet.). In determining whether the plaintiff met its initial burden, we may consider the plaintiff's original pleadings as well as its response to the defendant's special appearance.[6] *Touradji v. Beach Capital P'ship, L.P.*, 316 S.W.3d 15, 23 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Wright v. Sage Eng'g, Inc.*, 137 S.W.3d 238, 249 n.7 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

Whether a court has personal jurisdiction over a defendant is a question of law that we review *de novo*. *See Spir Star AG v. Kimich*, 310 S.W.3d 868, 871 (Tex.

---

[6] While Skylift mentions briefly in its statement of facts that there were no jurisdictional allegations pertaining to Skylift or Nesco in Plaintiffs' first amended petition, it does not make this argument in its appeal. Thus, we focus our inquiry on whether Skylift negated all bases for jurisdiction. We note, however, we consider in our review not only the Plaintiffs' petition but the pleadings before the court, which includes their response. *See Touradji v. Beach Capital P'ship, L.P.*, 316 S.W.3d 15, 23 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Wright v. Sage Eng'g, Inc.*, 137 S.W.3d 238, 249 n.7 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

2010). When, as here, a trial court does not issue findings of fact and conclusions of law in support of its ruling, we presume the trial court resolved all disputed facts in a manner that favors its ruling. *Id.* at 871–72; *Retamco Operating, Inc., v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009); *see also BMC Software Belg.*, 83 S.W.3d at 795.

### III. Analysis

## A. General Principles of Personal Jurisdiction

If the exercise of jurisdiction is statutorily authorized and consistent with federal and state constitutional due process, a trial court has personal jurisdiction over a nonresident defendant. *Spir Star*, 310 S.W.3d at 872. Although a jurisdictional allegation may satisfy the Texas long-arm statute, it may not be sufficient to satisfy the requirements of due process. *Moncrief Oil*, 414 S.W.3d at 149; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 17.042.[7] A defendant must purposely establish "minimum contacts" with Texas, and the court's exercise of jurisdiction must comport with "fair play and substantial justice." *See TV Azteca v. Ruiz*, 490 S.W.3d

---

[7] The Texas long-arm statute provides that a nonresident does business in the state if it: "(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state; (2) commits a tort in whole or in part in this state; or (3) recruits Texas residents, directly or through an intermediary located in this state for employment inside or outside this state." Tex. Civ. Prac. & Rem. Code Ann. § 17.042.

8

29, 36 (Tex. 2016) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Moncrief Oil*, 414 S.W.3d at 150).

**B. General Jurisdiction**

General jurisdiction results when a defendant's contacts are "continuous and systematic" and will permit a court to exercise personal jurisdiction over a defendant even if the cause of action did not arise from or relate to activities conducted within Texas. *See CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996) (citation omitted). A court may only assert general jurisdiction over a foreign corporation when the "corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum state.'" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The nonresident's contacts with Texas must be continuous, systematic, and substantial for a Texas court to exercise general jurisdiction over it. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). With respect to a corporation, its place of incorporation and principal place of business are "paradig[m] . . . bases for general jurisdiction." *Daimler AG*, 571 U.S. at 137 (citation omitted). General jurisdiction requires a more demanding minimum contacts analysis than specific jurisdiction. *CSR Ltd.*, 925 S.W.2d at 595.

The evidence showed that Skylift is incorporated in Ohio and has its principal place of business there. Skylift does not have any offices in Texas, does not have bank accounts in Texas, does not have a registered agent in Texas for service of process, never intentionally completed a sales transaction shipping its products into Texas, and does not pay taxes in Texas. While Skylift representatives occasionally travel to the offices of its distributors, there was no evidence showing that any of these representatives went to these locations in Texas. Rather, Naughton testified he visited Nesco's headquarters, and the Appellees concede Nesco has its headquarters in Indiana. The evidence show that Skylift has less than ten products it manufactured in Texas of the total products it has sold in the United States, that is, only a small fraction of the equipment it has sold.[8]

Appellees point to Skylift's "long term relationships with distributors with locations in Texas[]" as a sufficiently significant contact to establish that general jurisdiction exists to allow a Texas court to exercise jurisdiction over Skylift on any and all claims. We disagree. The Appellee's also rely on the fact Skylift offers training to its distributors and provides them with a way to contact Skylift for advice. But regardless of the length of these relationships, the evidence fails to show

---

[8] There is no evidence in the record of sales volume beyond these estimations. Appellees failed to submit any evidence of the cost of these units or of firm sales figures within the United States or within Texas.

Skylift's contacts with Texas were continuous or systematic. In concluding that a plaintiff failed to establish the court had general jurisdiction over a defendant, the Texas Supreme Court pointed to factors including the fact the defendant had no offices in Texas, no employees in Texas, no correspondence with Texas residents, had no property in Texas, did not pay taxes in Texas, and did not enter into contracts that it performed in Texas. *See CSR Ltd.*, 925 S.W.3d at 595.

Turning to the boom on the equipment involved in the casualty, the evidence shows Skylift occasionally purchases booms for its equipment from a vendor in Texas. But none of the evidence shows how frequently such booms had been purchased. And even if some booms were purchased from a Texas seller, the "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984); *see also PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 171 (Tex. 2007) (quoting *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 808 (Tex. 2002)) (both recognizing that "purchases from Texas vendors will not alone support the exercise of general jurisdiction"). Moreover, the evidence in the hearing shows the equipment involved in the casualty did not have a boom sold by a Texas resident.

11

Appellees do not dispute that Skylift is not incorporated in Texas and does not have its principal place of business here, never advertised its products for sale in Texas, has no property in Texas, and has no offices or employees in Texas. The evidence falls well short of proving that Skylift's contacts were either continuous or systematic to render Skylift "essentially at home" in Texas. *See Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 72 (Tex. 2016) (quoting *Daimler AG*, 571 U.S. at 139); *CSR Ltd.*, 925 S.W.2d at 595. Accordingly, the trial court erred to the extent its ruling implies that it could exercise general jurisdiction over Skylift. *See CSR Ltd.*, 925 S.W.3d at 595.

## C. Specific Jurisdiction

To support an exercise of specific jurisdiction, there must be a substantial connection between a nonresident defendant's forum contacts and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 585; *Am. Type Culture Collection*, 83 S.W.3d at 806 (noting that specific jurisdiction over a non-resident defendant requires "(1) the defendant's contacts with the forum must be purposeful, and (2) the cause of action must arise from or relate to those contacts"). While foreseeability is a factor in a minimum contacts analysis, foreseeability alone will not support personal jurisdiction. *CSR Ltd.*, 925 S.W.2d at 595. A defendant "must take an action '*purposefully directed* toward the forum state' to be subject to the jurisdiction of its

courts." *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987)).

"[A] seller's awareness 'that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.'" *Spir Star*, 310 S.W.3d at 873 (quoting *CSR Ltd*., 925 S.W.2d at 595). A stream-of-commerce analysis is only relevant to specific jurisdiction and provides no basis for exercising general jurisdiction over nonresident defendants. *Id.* at 874 (citations omitted).

## 1. Purposeful Availment

We analyze "stream of commerce" plus "additional conduct" to determine whether the court has personal jurisdiction over a product manufacturer. *Moki Mac*, 221 S.W.3d at 577. This analysis requires "additional conduct" above simply placing the product in the stream of commerce which manifests "an intent or purpose to serve the market in the forum State." *Spir Star*, 310 S.W.3d at 873 (quoting *Asahi*, 480 U.S. at 112; *Moki Mac*, 221 S.W.3d at 577; *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005)). Additional conduct examples include: (1) designing the product for the forum State's market; (2) advertising in the forum State; (3) establishing channels for providing regular advice to customers in the

13

forum State; and (4) marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. *Id.*

The United States Supreme Court has explained that

if the sale of a product of a manufacturer . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer . . . to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Only the defendant's actions constitute purposeful availment, and a nonresident defendant may not be haled into a Texas court based solely on the unilateral activities of a third party. *Michiana*, 168 S.W.3d at 785. We consider three factors in determining whether a nonresident has purposefully availed itself of the privilege of conducting business in Texas: (1) whether the defendant's contacts are its own, rather than the unilateral activity of another party or third person; (2) whether the contacts are purposeful, rather than random, fortuitous, or attenuated; and (3) whether the defendant sought some benefit, advantage, or profit by availing itself of Texas. *See Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 559 (Tex. 2018) (citing *Moncrief Oil Int'l Inc.*, 414 S.W.3d at 151.

14

### a. Designing the Product for the Forum State's Market

There was no evidence in this case that Skylift designed the Mini-Derrick involved in the casualty for the Texas market as opposed to other locations in the United States. Instead, the evidence at the hearing shows Skylift manufactures specialty utility easement equipment for use throughout the United States. We note the Appellees have never claimed that Skylift designed the equipment involved for a Texas market.

### b. Advertising in the Forum State

Appellees argue that Skylift's website provides "specs and pricing" and that it advertises on its website that it is an exhibitor at the International Construction and Utility Equipment Exposition.

In *CMMC v. Salinas*, 929 S.W.2d 435, 437–40 (Tex. 1996), the Texas Supreme Court held that due process prohibited specific jurisdiction in Texas for a personal injury suit resulting from a French company's winepress equipment sold to a Texas vineyard. The Court explained that neither the manufacturer nor distributor "made any effort to market CMMC's equipment in Texas[.]" *See CMMC*, 929 S.W.2d at 439. Even though the company's independent distributor ran ads for CMMC's products in national publications, which circulated in Texas, the French manufacturer made only one other sale in Texas and did not initiate the sale involved

in the accident that resulted in the plaintiff's injury in Texas.[9] *See id.* at 436–37, 439; *see also Michiana*, 168 S.W.3d at 787.

The Court further applied some of these principles in *Moki* Mac. In that case, a Utah company actively solicited business in Texas by solicitating prior and potential Texas customers, placed local media ads, engaging in "mass and targeted direct-marketing email campaigns," and utilizing existing customer relationships to recruit additional Texas business. 221 S.W.3d at 577–79. The Court compared the *Moki Mac* facts with the facts of *Michiana* where a seller had not purposefully directed its marketing efforts at Texas but sold the equipment, an RV, to a buyer who lived in Texas by the "mere fortuity that [the buyer] happened to reside here[.]" *See id.* at 577.

When assessing contacts based on interactive websites, we evaluate the defendant's contacts according to a sliding scale similar to the one used in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa 1997). *See Washington DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 737 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). "[T]he likelihood that personal jurisdiction can be

---

[9] Additionally, the Court noted that CMMC's distributor, KLR, sold the equipment of numerous manufacturers, only one of which was CMMC. *See CMMS v. Salinas*, 929 S.W.2d 435, 437 (Tex. 1996). Similarly, in the present case, Nesco advertised and sold equipment for numerous manufacturers, only one of which was Skylift.

constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Mfg., Co.*, 952 F. Supp. at 1124; *Washington DC Party Shuttles*, 406 S.W.3d at 737. On one end of the scale are passive websites, where the foreign defendant simply posted information that can be viewed in other jurisdictions, and these will not support the exercise of personal jurisdiction. *Washington DC Party Shuttles*, 406 S.W.3d at 737. On the other end of the scale are websites through which a nonresident defendant has entered into contracts with residents of the forum state "'that involve the knowing and repeated transmission of computer files' over the internet." *Id.* (quoting *Zippo Mfg., Co.*, 952 F. Supp. at 1124). In between are cases involving interactive websites where a user can exchange information with a host computer. *Id.* In those situations, "we examine 'the level of interactivity and commercial nature of the exchange of information that occurs' on the website." *Id.* (quoting *Zippo Mfg., Co.*, 952 F. Supp. at 1124).

It is Skylift's purposeful contacts with Texas, not nationally, that are relevant. *See J. McIntyre Machinery, Ltd., v. Nicastro*, 564 U.S. 873, 886 (2011); *Trokamed GmbH v. Vieira*, No. 01-17-00485-CV, 2018 WL 2436610, at *5 (Tex. App.— Houston [1st Dist.] May 31, 2018, no pet.) (mem. op.) (noting the nonresident defendant sought a national publication, not a Texas one). While anyone nationwide

17

may have been able to access the website, there is no evidence that Skylift specifically targeted Texas with advertising. The website was akin to a manufacturer placing advertisements in a nationally circulated magazine as opposed to one circulated solely in Texas. *See C.W. Brown Mach. Shop, Inc. v. Stanley Machinery Corp.*, 670 S.W.2d 791, 792, 794 (Tex. App.—Fort Worth 1984, no pet.) (concluding no jurisdiction existed when the nonresident defendant advertised in national magazines but did not use local, regional, or state advertising media to sell its product); *see also CMMC*, 929 S.W.2d at 439 (determining there was no jurisdiction and noting that there was no effort to market in Texas except advertisements placed in magazines with national circulation). Skylift's current president testified that no sales or contracts are consummated through the website. Rather, people who have questions or inquiries may submit them. Additionally, Skylift's former president averred in his affidavit that Skylift did not advertise or solicit business in Texas. We conclude the level of interactivity on Skylift's website does not support the exercise of specific jurisdiction.

### c. Channels for Communication

There are no allegations or evidence that Skylift established continuing internet relationships with Texas residents through its website or that it communicated at all with Texas residents through its website. Skylift's website lists

18

Nesco as one of its distributors, and Skylift's representative testified that he was aware Nesco had locations in Texas. On this record, we conclude that "'the level of interactivity and commercial nature of the exchange that occurs' on [Skylift's] website does not show that [Skylift] has invoked the benefits and protections of Texas laws by purposefully availing itself of the privilege of conducting activities here." *See Washington DC Party Shuttles*, 406 S.W.3d at 738; *Zippo Mfg., Co.*, 952 F. Supp. at 1124.

There was some evidence that Skylift had a phone line available for technical questions about equipment which was utilized primarily by independent distributors and independent service centers. There is no evidence that Texas residents or customers called this line or that it was meant to serve Texas customers.

### d. Marketing through a Distributor who is an Agent in the Forum

Another example of additional conduct that may be considered to determine whether a manufacturer purposefully availed itself of doing business in the forum is if it marketed its products through a distributor *that acted as its agent*. *See Spir Star*, 310 S.W.3d at 873 (citations omitted) (emphasis added). While Appellees argue that Skylift uses a "national distributor network," they do not allege that any of these distributors are Skylift's agents in Texas. Here, Naughton testified that Skylift does not have agents that sell its products in Texas. He also testified Skylift does not

19

supply literature or pictures of its products to distributors. While Skylift has a distribution network that includes several distributors, there is no evidence that they controlled this network or how those in the network sold its equipment.

"The essential feature of agency is the right of control." *Elk River, Inc. v. Garrison Tool & Die, Ltd.*, 222 S.W.3d 772, 782 (Tex. App.—Dallas 2007, pet. denied) (citing *Schott Glas v. Adame*, 178 S.W.3d 307, 315 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). There was no evidence that Skylift controlled what products these distributors sold or where the distributors sold the products. There is no evidence showing that Skylift jointly owned or that its officers were also officers in any of its distributors. There is also no evidence showing that a formal relationship, such as a written distributorship agreement, exists between Skylift and Nesco. The evidence shows Nesco advertises, sells, and rents products made by manufacturers other than Skylift. Neither the Appellees, nor Nesco, presented any evidence showing Skylift had the right to control Nesco. On this record, no agency relationship was shown in the hearing to exist. *See Schott Glas*, 178 S.W.3d at 314–17 (concluding no agency relationship existed when sales representative sold products of defendant manufacturer and others, but manufacturer did not control details of sales representative's work). While Skylift sells its products throughout the United States, a nationwide distributorship, without more, is insufficient to

20

confer specific jurisdiction over a manufacturer as a matter of due process. *See J. McIntyre*, 564 U.S. at 887. And a sale of ten products that found their way to Texas does not show Skylift did a substantial amount of business in Texas. *See Moki Mac*, 221 S.W.3d at 578.

Appellees arguments focus on the Skylift's contact with its distributors and not on Skylift's contacts within the State.[10] The Texas Supreme Court has clearly explained that courts are not to focus on a company's general contacts but on the contacts between the defendant and the parties sued. *See TV Azteca*, 490 S.W.3d at 38 (quoting *Moncrief Oil*, 414 S.W.3d at 151) ("[O]nly the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person."). While Appellees pointed to Skylift's attendance at an international trade show, the evidence shows the trade show occurred in in Kentucky. And nothing about attending a trade show established that Skylift enjoys any connection with Texas or a Texas market. A defendant's sporadic attendance at a trade show, even if in Texas, "does not demonstrate availment of the Texas market." *See Elk River, Inc.*, 222 S.W.3d at 782 (citing *Am. Type Culture*, 83 S.W.3d at 809).

---

[10] In their brief, Appellees characterize the distributors as "Texas distributors[;]" however, the record establishes that although Nesco may have conducted business in Texas, it was an Indiana corporation with its principal place of business in that state.

21

We conclude that Appellees failed to establish that Skylift purposefully availed itself of the privilege of conducting activities in Texas or that it invoked the benefits and protections of Texas's laws. *See Retamco*, 278 S.W.3d at 338.

## 2. Substantial Connection to the Operative Facts of the Litigation

A Texas court may only exercise specific jurisdiction over a nonresident defendant if the injury arises from or relates to the nonresident's purposeful contact. *Moki Mac*, 221 S.W.3d at 572–73. The injury giving rise to this suit did not relate to or arise out of any contacts by Skylift within Texas. Rather, the record establishes that Nesco purchased the Mini-Derrick involved in the casualty for its rental fleet from Skylift and that Nesco picked the equipment up in Indiana. "It is possible that the 'unilateral activity' of a third party, *rather than the defendant's distribution scheme*, landed the [product] in [the forum], which is the very scenario that doomed the plaintiffs' case in *World-Wide Volkswagen*." *Spir Star*, 310 S.W.3d at 877 (quoting *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550–51 (7th Cir. 2004)). Even had the Appellees presented evidence showing Skylift purposely availed itself of the right to do business in Texas, the evidence does not show that Nesco sold the equipment involved in the casualty as Skylift's distributor in the State of Texas. Instead, Nesco, an Indiana corporation, purchased the Mini-Derrick from Skylift, an Ohio corporation, for its own use. Nesco paid for and picked up the lift in Indiana.

22

Subsequently, Nesco unilaterally decided to use the lift in the rental fleet that it operated in Texas, and that's where the casualty occurred. Given the evidence before the trial court in the hearing, we conclude the casualty did not arise or relate to any contacts Skylift might have had with Texas. *See id.*

The Appellees argue that the fact Skylift purchases booms for some of its products from an entity that sells them in Texas supports its claim that the trial court could exercise specific jurisdiction over Skylift. Naughton, however, testified that Skylift did not install booms purchased from a Texas entity on its Mini-Derrick line of products. And the fact Skylift has purchased some booms from Time Manufacturing, a Texas vendor, does not show that any of those purchases connected any of those sales to the casualty. *See All Star Enter., Inc. v. Buchanan*, 298 S.W.3d 404, 425 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (explaining that a nonresident defendant's purchases from a Texas vendor were not sufficient to establish specific jurisdiction where those purchases were unconnected to the accident at issue).

## IV. Conclusion

We conclude the trial court erred in denying Skylift's special appearance. For that reason, we reverse the trial court's order denying Skylift's special appearance

23

and render the judgment the trial court should have rendered, dismissing Appellees'

claims against Skylift for lack of jurisdiction.

REVERSED AND RENDERED.

_____
CHARLES KREGER
Justice

Submitted on January 24, 2020
Opinion Delivered April 16, 2020

Before Kreger, Horton and Johnson, JJ.

24